## Lott *v.* Frankford & Southwark Pass. R. R., Appellant.

*Negligence—Street railways—Whistle—User of streets.*

Where the public and a street railway company have a common user of a street, it is the duty of the railway company to exercise such watchful care as will prevent, as far as possible, accidents or injuries to persons and property. In such circumstances, a greater degree of care on the part of the railway company, as well as the public, is required; but the degree of care varies with the circumstances of each case.

In an action against a street railway company to recover damages for an injury to a team of horses and a wagon, it is proper to submit the case to the jury, where there is evidence that defendant's engineer, on a dummy engine, sounded the whistle of the engine in an unusual and extraordinary manner as he approached plaintiff's wagon, which was on the other track, and that plaintiff's horses were thereby frightened and ran in front of the engine, resulting in the injuries for which the suit was brought.

Argued Jan. 5, 1894. Appeal, No. 422, Jan. T., 1893, by defendant, from judgment of C. P. No. 1, Phila., Dec. T., 1889, No. 254, on verdict for plaintiff, Jamison Lott, Jr. Before Sterrett, C. J., Green, Williams, McCollum, Mitchell, Dean and Fell, JJ.

Trespass for injuries to horses and wagon.

At the trial, before Biddle, J., it appeared that early in the morning of April 18, 1889, plaintiff's employees were driving a team of horses and a wagon on Kensington avenue on their way to Philadelphia. Defendant company operated, on Kensington avenue, a double track street railway by means of cars and small locomotives, popularly known as "dummy" engines. Evidence on behalf of plaintiff tended to show plaintiff's wagon was being driven along one of the tracks in a train of other wagons, and as it approached a dummy engine on the other track it was turned off towards the curb. The engineer then sounded an unusual and extraordinary whistle, and plaintiff's horses became frightened and ran in front of the engine and were injured.

Plaintiff's evidence was to the effect that his horses were quiet and used to the ordinary running of the cars.

The court charged in part as follows:

" Now the allegation here is that these noises, or this noise,

was not necessarily incident to the running of this road; that while it may be that it was their duty to give notice by sounding a whistle if danger was apparent to the engineer who was running the train, yet it is contended here that the whistle blown on this occasion was of such an unusual and extraordinary character as to frighten horses which otherwise were perfectly accustomed to the use of dummies, and the usual and necessary noises which they create. The plaintiff called a number of gentlemen who were in the habit of using this road. It seems to be a road to market from Frankford, a favorite route, or at least a route very much used by farmers coming to market. These gentlemen say that they have been using the road, some of them for twenty or twenty-five years, and they say that they never heard such a whistle as this was before. One of them said that once before he had heard such a whistle, but the others said that they had never heard such a whistle. One of them said that it was of such a character as to induce him to look out of his wagon to see what was going on. Therefore the question for you to determine is, was this an unnecessary thing for them to do for the purpose of warning persons whom they feared were coming on the track? Now the engineer, whose testimony I think was perfectly frank [said that he did not see anybody on the track; that the persons who were alleged to have been on the track on Orleans street did not influence him to blow this whistle at all; that it was not that anybody was on the track, but his allegation is that he thought one of the wagons in this train of wagons approaching him was about to get on the track.] [5] The question will be for you to say whether a single blow of the whistle would not have been enough to warn this man, if he was or did intend to get right in front of the engine, to keep back. The question of course, the main question here, if you believe this was an undue and unnecessary use of this whistle and that the plaintiff is entitled to damages, is to decide what you consider a fair compensation for the injury he has sustained. . . .

" [Gentlemen, I don't know whether you recall the testimony of the engineer. What I thought he said, and what I told you he said, was that he thought one of these wagons was coming on the track. The recollection of the counsel for the defendant is that he said he saw it coming or turning on the

track. I will have to leave it to your recollection for you to decide. It don't make, perhaps, a great deal of difference, in view of what occurred, whether he saw this man coming, or thought he was coming on this track." ] [6]

Defendants' points were among others as follows :

" 2. Under all the evidence, it appearing that there was no unnecessary or wanton sounding of the whistle, but that it was done to warn the driver of the vehicle that preceded it, the verdict should be for the defendant." Refused. [1]

" 3. Under all the facts of this case, it was the duty of the engineer to sound the whistle as he did, and therefore your verdict should be for the defendant." Refused. [2]

" 4. It appearing, from the evidence, that the plaintiff's horse was high spirited and easily frightened, he was guilty of contributory negligence in driving it along Kensington avenue, and therefore your verdict should be for the said defendant." Refused. [3]

6. Request for binding instructions. Refused. [4]

Verdict and judgment for plaintiff for $455.50.

*Errors assigned* were (1–6) instructions, quoting them.

*Wm. Henry Lex*, for appellant, cited: R. R. v. Stinger, 78 Pa. 219; Steiner v. Traction Co., 134 Pa. 199; P. R. R. v. Horst, 110 Pa. 231; R. R. v. Greiner, 113 Pa. 606; R. R. v. Barnett, 59 Pa. 259.

*Wendell P. Bowman*, for appellee, cited: Shearman & Redfield, Neg., 3d ed. 573; Steiner v. Traction Co., 134 Pa. 199; R. R. v. Barnett, 59 Pa. 259; R. R. v. Werner, 89 Pa. 59; Gates v. R. R., 154 Pa. 566; R. R. v. Horst, 110 Pa. 231.

PER CURIAM, January 15, 1894 :

In view of the testimony, it was clearly the duty of the learned trial judge to submit this case to the jury; and he did so in a clear, concise and impartial charge, of which the defendant company has no just reason to complain. To have instructed the jury, as requested in either of defendant's points, recited in the first four specifications, would have been plain error. Instead of showing " that there was no unnecessary or

wanton sounding of the whistle," etc., the testimony tended to prove quite the contrary. The defendant company's right to use Kensington avenue was not exclusive. It was in common with the public; and wherever such common user of a highway exists, it is the duty of railway companies to exercise such watchful care as will prevent, as far as possible, accidents or injuries to persons and property. In such circumstances, a greater degree of care, on the part of the railway company as well as the public, is required. The degree of care to be exercised must necessarily vary with the circumstances of each case: Gilmore v. Railway Co., 153 Pa. 31.

The testimony was also conflicting, and presented questions of fact which were necessarily for the consideration of the jury. In any view that can be taken of the case, it could not have been withdrawn from their consideration.

There is nothing in either of the specifications of error that would justify a reversal of the judgment.

Judgment affirmed.