# Barclay S. Smith v. The Phila. Traction Co., Appellant.

*Streets—Railways and travelers—Respective rights of.*

The right of railway companies to the surface of streets covered by tracks is superior to that of the public, but this higher right in no way absolves the company from the greater care cast upon it because of the increased speed of trolley cars on crowded thoroughfares.

All have a right to use the streets for passage, with a reasonable concession to the rights, needs and conveniences of each other and regardful of the restrictions, facilities and purposes of the modes of travel employed.

So long as the right of common user of the tracks exists in the public, it is the duty of passenger railway companies to exercise such watchful care as will prevent accidents or injuries to persons, who, without negligence upon their own part, may not at the moment be able to get out of the way of a passing car. The degree of care to be exercised must necessarily vary with the circumstances and therefore no unbending rule can be laid down.

*Street railways—Exacting duties of motorman.*

Very much depends upon the care of the motorman. He should always be on the alert to avoid danger, and his attention never should be diverted from his duties. He should keep his eye constantly on the track before him. If he is permitted to gaze at the houses or other objects while the car is in motion and an accident occurs by reason of such conduct, the company employing him must expect to be held responsible.

*Street railways—Negligence—Conduct of motorman—Question for jury.*

Where, under the evidence, the jury might have found that the driver did all in his power to leave the track upon seeing the car approach, and that the motorman was looking to the side of the street instead of in front, while the car was running very fast, the case was one for the jury under proper instructions.

Argued Oct. 15, 1896. Appeal, No. 117, Nov. T., 1896, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1894, No. 118, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Trespass for alleged negligent collision. Before BEITLER, J.

The following facts appear from the opinion of the Superior Court:

" On January 1, 1894, the plaintiff's team, hitched to a heavily laden wagon in charge of John Search, the driver, was going

VOL. III—9

northward on Front street, between Bainbridge and Catharine streets, in the city of Philadelphia, and when about midway of a long square, collided with the defendant's electric car going south. The horses and wagon were injured in the collision, and this action was brought to recover the loss thus occasioned. It appeared from the testimony that at the time of the collision there were ' New Year's Shooters ' in the street noisily celebrating the advent of the new year, and that there were other teams and wagons standing, and passing along in both directions, Front street being at that point a much traveled thoroughfare.

" The testimony as to the conduct of the motorman and the plaintiff's driver immediately before and at the time of the collision was conflicting. It was alleged on behalf of the plaintiff that it was usual for teamsters to drive on the track in both directions, and that in view of the crowded condition of the street at the time of the accident the driver turned into the car track in order to pass toward his destination with less interruption; and that he turned out at once upon seeing the car approach, and endeavored to get off as quickly as possible, but was necessarily delayed by other wagons on the street on either side of the track. It was further testified that the motorman, instead of looking ahead, was looking to the westerly side, attracted by the ' Shooters,' and was watching them; that had he looked in the direction the car was running he could have seen the plaintiff's team in time to stop the car, and avoided the collision; that the car was then running very fast, without any warning of its approach, and it was not slowed up until it struck the wagon; that the driver called to the motorman to stop the car but no attention was paid to the request, and that if the motorman had looked and attended to his business he must have seen the plaintiff's team some hundreds of feet above the place of collision and could have avoided the accident; that the driver had his team and fore part of the wagon off the track, and that the car struck the hind wheels; and that by the collision the horses were knocked down and cut and the wagon broken.

" On the part of the defendant it was testified that the car was not going very fast, and that there was a carriage or a phaeton just in front of the car going south which turned off the track near the place of the accident; that though the brakes were

applied, the car slid along nearly as fast as with the brakes off, that the wagon slid along the track for some distance after the driver turned out—'both were sliding at the same time; the wagon couldn't get out and the car could't stop;' that the car gong was sounded, and as soon as the motorman saw the wagon he put on his brake as tight as he could, and that the wagon was struck on the side near the front.

"With the testimony supporting these allegations, the learned trial judge submitted the case to the jury under instructions relative to the rights and duties of the railway company and those using vehicles along the street. He told them that the adoption of electricity as a motor power for street cars, and the modern requirements of more rapid transit had led to the adoption of more stringent rules regulating the rights of street cars and of private vehicles. That although railway companies have not the exclusive right to the streets they occupy, as a steam railway has to its right of way, their rights are superior to those of the traveling public; that their cars have the right of way on their lines, and that it is the duty of other vehicles to give them unobstructed passage; because the cars cannot turn off the tracks, and should have the right of way for the convenience and accommodation of the public using them. That the substitution of electric cars for horse cars renders impracticable and dangerous certain uses of the streets which were once permissible and comparatively safe, and introduced new conditions, the nonobservance of which constitute negligence. These instructions were, in part, read from the opinions of the Supreme Court in Ehrisman v. Railway Co., 150 Pa. 180, and Winter v. Railway Co., 153 Pa. 28. The jury were further told that when the plaintiff's driver went upon the track he assumed more risk and a higher degree of care on his part with reference to the approach of cars than if he had kept to the side of the street. He left it to the jury to find whether the driver was guilty of carelessness in going upon the track at all, in view of the fact that he knew there was a driveway on either side and also knew the condition of the track and the course of the cars. They were further instructed that if the plaintiff's teamster in any degree contributed, by his negligence, to the collision; or if the accident happened because of the miscalculation of the driver as to control of his vehicle; or because

of the miscalculation of both driver and motorman in this respect and therefore not attributable exclusively to the negligence of either; or if the collision was a mere accident; or if the collision was not the result solely of the defendant's negligence, in either event the plaintiff could not recover. But that in the absence of these conditions, or of negligence on the part of the driver, and if the collision was caused solely by the defendant's negligence, a recovery might be had for such amount as would compensate the plaintiff for the actual loss he sustained in the premises.

"Under these instructions the jury found a verdict for the plaintiff for $1,000." Defendant appealed.

*Errors assigned* were, (1–4) refusing defendant's points, which points were as follows : "1. The plaintiff was bound to the exercise of more than ordinary care and caution since he voluntarily placed himself in a dangerous position when he drove his team upon the tracks in an opposite direction from that in which he knew the cars of the defendant company were propelled. His failure to turn out of the track in time to avoid the accident was negligence, and the verdict should be for the defendant.

"2. It is the duty of drivers of private vehicles to give unobstructed passage to electric cars, and the plaintiff being unnecessarily upon the track, took the risk of a collision and was guilty of contributory negligence.

"3. If the jury believe the motorman did all in his power to avert the accident, and failed to do so because he did not see the team in time, there can be no recovery, and the verdict should be for the defendant.

"4. Under all the evidence the verdict should be for the defendant."

*J. Howard Gendell,* for appellant.—He who drives his wagon along a railroad track towards an approaching car, and thus meets with a head-end collision, has a difficult task to maintain his right to damages. Every presumption is against him. Nothing but urgent necessity and an obviously clear track will justify him in putting himself in this position. He cannot expect the car to remove from the track for his accommodation; and it is unreasonable to require a public conveyance, containing many passengers, to await his pleasure. The motorman of

the approaching car may therefore reasonably assume that he will remove in time to permit the car to pass upon an unobstructed track, and may act on the assumption. No negligence short of recklessness on the part of the motorman should subject him or the railway company to damages. To justify a recovery several elements should concur; the necessity and urgency for driving longitudinally on the track towards the approaching car must be manifest; he should exercise the greatest vigilance and precaution while there; and the negligence of the motorman must be equally manifest and great. If any of these elements be wanting, the action should be barred: Winter v. Railway Co., 153 Pa. 26; Ehrisman v. Harrisburg Railway Co., 150 Pa. 180; Carroll v. R. R. Co., 12 W. N. C. 348; Thomas v. Pass. Railway Co., 132 Pa. 504; Carson v. Railway Co., 147 Pa. 219; R. R. Co. v. Bell, 122 Pa. 58; Moore v. R. R., 108 Pa. 349; Wheelahan v. Traction Co., 150 Pa. 187; Omslaer v. Traction Co., 168 Pa. 519; Warner v. Railway Co., 141 Pa. 615.

*Edgar N. Black* and *R. J. Monaghan*, for appellee.—It is believed that none of the assignments of error admit of argument, except the fourth: " Under all the evidence the verdict should be for the defendant."

The defendant's first point was not entitled to an unqualified affirmance. The facts on which it is predicated and the inferences to be drawn from them were certainly for the jury, and to the jury in his general charge the learned trial judge submitted them. The proposition asserted in the first point is certainly not the law, without regard to the surrounding circumstances of the case.

Nor was the defendant's second point entitled to an unqualified affirmance. It assumes the disputed fact that the plaintiff was unnecessarily upon the track, that he took the risk of a collision and was therefore guilty of contributory negligence. Whether this was true or not was certainly for the jury, and to the jury it was referred with proper instructions.

It can hardly be seriously argued that the third point is sound. Whether the motorman saw the plaintiff's team in time or not was a disputed fact in the case. Whether he should have seen it earlier if he had been looking in front of him, instead of watching the paraders on the street, was the very pinch of the

case. If he did not see the team in time because of his negligence in looking in another direction, in place of in front of him (and the jury so found), we confidently submit that would be ground for recovery, unless prevented by some other circumstances of the case. The learned trial judge submitted this, as well as all of the other disputed questions, to the jury, and the jury decided all of them against the appellant.

The presumption of the common law is that every one does his duty until the contrary is proved, and in the absence of evidence on the subject it will be assumed that a person driving on a railway track exercised all the precautions that a due regard for his own safety and that of others required.

As to the exacting care and vigilance required of a motorman, see Schnur v. Traction Co., 153 Pa. 30; Harkins v. Traction Co., 173 Pa. 146; Reilley v. Traction Co., 176 Pa. 335; Evers v. Traction Co., 176 Pa. 376; Henne v. Railway Co., 1 Pa. Superior Ct. 311; Booth's Street Railway Law, secs. 306, 307.

Where the gripman or motorman of a street railway company recklessly runs on at a high rate of speed when the probable consequence is a collision, that is negligence for which a railway company is answerable: Thatcher v. Traction Co., 166 Pa. 68; Haney v. Traction Co., 159 Pa. 398; Harkins v. Traction Co., 173 Pa. 149.

OPINION BY SMITH, J., December 7, 1896 (after stating the facts as above):

Was the driver's failure to get off the track in time to avoid the collision, under the circumstances negligence per se? If it was, then the defendant's fourth point should have been affirmed and a verdict directed for the defendant. If, however, it was not, then the questions of negligence and contributory negligence were for the jury.

It must be admitted that he who drives a team across or along an electric railway track is held to a higher measure of duty than if it were a track for horse cars. One purpose of the greater motor power is to increase the speed of the cars, and the right to run more rapidly necessarily follows from the nature and purpose of the power and the grant of the right to use it. But a corresponding obligation arises. He whose agencies

increase the danger of travel on the highway assumes the duty of increased care and vigilance.   The measure of care is thus increased on both sides; and the responsibility of each to the other is to be determined in the light of their relative rights and duties thus established.

It is not contended that the driver was a trespasser while on the track, nor that he had no right to be there under any circumstances.   But it is earnestly and ably argued that the driver having gone upon the track knowing the cars were running toward him, it was his duty to be constantly on the lookout, and to clear the track for their passage; that nothing but an urgent necessity could justify him in being on the track, and that no such necessity was shown.

Duties and responsibilities grow out of rights and the circumstances accompanying their exercise, and vary with their scope and the dangers attending them.   It is true the right of a railway company to the surface of the streets covered by the tracks is superior to that of the public; the cars have the right of way thereon over private vehicles and pedestrians, and the latter must yield to this paramount right.   But this higher right in no way absolves the company from the greater care cast upon it because of the increased speed of its cars on crowded thoroughfares.   It is also true that the streets are common to all who desire to pass over them, including the surface covered by the tramways; but this does not mean that travelers by carriage or on foot may obstruct the passage of street cars.

All have a right to use the streets for passage, with a reasonable concession to the rights, needs and conveniences of each other, and regardful of the restrictions, facilities and purposes of the modes of travel employed.   No one has an absolute, exclusive right to any part of the streets.   As was said in Gilmore v. Railway Co., 153 Pa. 31, "Street railway companies have not an exclusive right to the highways upon which they are permitted to run their cars, or even to the use of their own tracks.   The public have a right to use these tracks in common with the railway companies, and therefore, while the rights of the latter are in some respects superior to those of the former, as was said in Ehrisman v. East Harrisburg City Passenger Railway Co., 150 Pa. 180, it is not negligence per se for a citizen to be anywhere upon such tracks.   So long as the right of

a common user of the tracks exists in the public, it is the duty of passenger railway companies to exercise such watchful care as will prevent accidents or injuries to persons who, without negligence upon their own part, may not at the moment be able to get out of the way of a passing car. The degree of care to be exercised must necessarily vary with the circumstances, and therefore no unbending rule can be laid down." This statement of the law has been expressly adopted and applied in Gibbons v. Railway, 155 Pa. 279; Kestner v. Traction Co., 158 Pa. 422; Lott v. Railroad, 159 Pa. 471; Thatcher v. Traction Co., 166 Pa. 66.

The argument of appellant's counsel that "no negligence short of recklessness on the part of the motorman should subject him or the railway company to damages," because the driver was traveling in an opposite direction and must meet coming cars, is not well founded. While no doubt there is more reason to apprehend danger in traveling in an opposite direction to that of the cars, and therefore a greater degree of care is demanded, yet this is not unlawful in itself; it but furnishes an additional element for consideration in determining the question of the driver's negligence. In Thatcher v. Traction Co., supra, the court said: "The construction of the track and the form of the rail are with a view to a user in common. The right of the wagon, in certain particulars, is subordinate to that of the railway; the street car has, because of the convenience and exigencies of that greater public which patronizes it, the right of way; whether going in the same direction ahead of the car, or in an opposite one to meet it, the driver of the wagon must yield the track promptly on sight or notice of the approaching car; but he is not a trespasser because upon the track; he only becomes one if, after notice, he negligently remains there."

Under the evidence the jury might very properly have found that the driver did all in his power to leave the track upon seeing the car approach, and that the motorman was looking to the side of the street instead of in front, while the car was running very fast. The conductor of the car testified that, standing on the rear platform, he could see from Bainbridge to Catharine streets—the entire distance the cars travel on Front street. If that be true, there would seem to be no reason why the motorman could not have seen equally far, and also have

seen the approaching wagon, had he been attending to his duties. The responsibilities of the motormen, and the high degree of care they must exercise while operating electric cars, is a very important matter for consideration in these cases, involving so largely the public safety. In Schnur v. Traction Co., 153 Pa. 29, the Supreme Court said: "Very much depends upon the care of the gripman. He should always be on the alert to avoid danger, and his attention never should be diverted from his duties. He should keep his eye constantly on the track before him. If he is permitted to gaze at houses or other objects while the car is in motion, and an accident occurs by reason of such conduct, the company employing him must expect to be held responsible." This has been repeated, substantively, in many other Supreme Court cases, and also by this court: Henne v. Railway Co., 1 Pa. Superior Ct. 311. The fourth assignment is overruled.

The points made the subject of the first and second assignments asked the court, by implication at least, to determine questions of fact, while the third, also, could not be affirmed without assuming as true an important matter of fact in dispute. The case was well tried, and the learned judge carefully guarded the rights of the appellant in his instructions to the jury, and we find no reason for disturbing their verdict.

The assignments of error are all overruled and the judgment is affirmed.