Beaumont et al. *v.* Beaver Valley Traction Co.

224

Argued October 7, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Thompson Bradshaw,* of *May & Bradshaw,* for appellant.—There was no testimony to support a finding of negligence on the part of defendant's motorman: Moss v. Traction Co., 180 Pa. 389; Harvey v. Transit Co., 255 Pa. 220.

The only case in Pennsylvania that we have been able to find approaching ours on its facts is the case of Rose & Son v. P. R. T. Co., 73 Pa. Superior Ct. 260.

The widow Beaumont is barred from recovery because the deceased is charged with contributory negligence: Kilpatrick v. Transit Co., 290 Pa. 288; Minnich v. Transit Co., 267 Pa. 200.

*Richard S. Holt,* with him *A. G. Helbling,* for appellee.—There was an abundance of testimony to support a

finding of negligence on the part of defendant's motorman.

The widow Beaumont is not barred from recovery because of any contributory negligence: Little v. Telegraph Co., 213 Pa. 229; Kammerdiener v. Twp., 233 Pa. 328; Trumbower v. Transit Co., 235 Pa. 397; Carr v. Easton City, 142 Pa. 139; Davis v. Ice Co., 285 Pa. 177; McKenna v. Gas Co., 198 Pa. 31; Carlisle Boro. v. Brisbane, 113 Pa. 544.

OPINION BY MR. JUSTICE WALLING, November 25, 1929:
On the evening of December 18, 1927, the plaintiff, Elizabeth Beaumont and her husband, Edmond L. Beaumont, in company with plaintiff's sister, and Andrew Martin, were driven in the latter's automobile from their home near Sewickley, to Ambridge, Beaver County, where they spent the evening with friends. Starting home near midnight, it was discovered that the Martin car was out of gas and Louis Mercadante reluctantly undertook to tow the Martin car, with its occupants, to the nearest gasoline station. For this purpose, a rope was employed, which left a space of twenty feet between the cars. Merchant Street, the main thoroughfare of Ambridge Borough, extends in a northerly and southerly direction, and in the center thereof is the defendant's single track electric railway. This leaves, in the cartway, a paved space of some fourteen feet on either side of the track. The cross streets are numbered beginning with First Street on the southern edge of the borough. Mercadante drove out Fourteenth Street and turned south in Merchant Street, Martin being at the wheel of his automobile. As they approached Tenth Street they found two cars parked on the west side of Merchant Street, in passing which they straddled the west rail of the street car track. It was a cold night and the street was covered with ice. Mercadante, however, after passing the parked cars, turned his car back into the west cartway without trouble and proceeded across Tenth

Street towing the other car. Martin, with some difficulty, succeeded in getting the front wheel of his car back off the track, but his rear wheel slid along the rail, some fifty feet, until that corner of his car collided with a northbound electric street car. The Martin car was wrecked and landed against the curb on the southwest corner of Tenth and Merchant Streets, the tow rope having been broken by the collision. Plaintiff's husband, who sat in the rear seat near the point of contact, was killed. Mercadante was driving at a speed estimated at from thirteen to fifteen miles an hour and, watching the road ahead, did not know until the accident of the peril to which the Martin car and its occupants were suddenly exposed. This suit, brought to recover for the death of Mr. Beaumont, resulted in a verdict and judgment for the plaintiffs and defendant has appealed.

While the accident was most distressing, a careful study of the record fails to show facts necessary to sustain the judgment. The presumption is that defendant's motorman kept a sharp lookout ahead, as was his duty, especially when driving at night. The statement of the witness Earl, that he saw the motorman shake or nod his head, apparently in response to the conversation of a police officer on the front platform, did not prove failure of attention. A nod or shake of the head does not prevent a proper use of the eyes; if it did, few chauffeurs could escape the charge of negligence.

There was no sufficient proof of lack of control. While the headlights were burning on the automobiles in question, those on the Martin car were behind the other and could not be seen until the latter had left the track. Undoubtedly an automobile may properly be driven on a street car track, which, as here, was laid flush with the pavement; yet there the street car has the right of way and where, as here, there is ample opportunity to do so, the motorman may assume the automobile will give a clear track. In the instant case, when the head automobile turned onto the track to pass the parked cars, the

street car was three hundred feet away and the motor-man might properly assume that after passing the parked cars it would turn back off the track, as in fact it did. So, when the rear automobile appeared on the track, a like assumption arose until the contrary appeared. When an automobile is in motion, as here, there is a presumption that its movements are under control; but when one is stalled upon the track, or has not room to clear it, the motorman is put especially upon his guard. When the headlights of the Martin car cleared the track the reasonable conclusion was that the rear end of the car would follow, until it failed to do so. There was nothing to warn the motorman of special danger until he could see the rear end of the Martin car coming over the rail; then he apparently did all he could to stop the trolley car and avoid the accident. Plaintiffs' evidence failed to prove the contrary. The motorman could not see and did not know that the automobiles were connected by a rope. The Tenth Street cartway is twenty-four feet wide and according to evidence on behalf of plaintiffs, as shown by the broken glass, etc., the collision occurred some eight feet north of the line of the south curb, and the trolley car ran about fifty feet thereafter,—not far from its length, as it had to be moved forward so as not to obstruct traffic, if any, at that hour in Tenth Street.

Two of plaintiffs' witnesses, who were in the towing car, estimated the speed of the trolley car at thirty-five miles an hour; but, as it was coming toward them and they were going toward it, their opportunity to judge of the speed was far from satisfactory. Where vehicles moving in opposite directions, pass, to the occupants of each, the other seems to be going more rapidly than it is. To a passenger riding on a double track railroad, the trains moving in the opposite direction seem to fly by. None of the physical facts supports the conclusion that the trolley car was making such speed. For instance, one of plaintiffs' witnesses says it moved seventy-five

feet while the automobiles moved fifty feet. Again, it stopped on the icy track about a car length after the accident. As all the vehicles here involved were in Merchant Street, the fact that the accident happened also within the lines of Tenth Street is not important. The only charge of negligence here relates to the Martin car in Merchant Street. We are not persuaded that as to it the speed was excessive.

That after the accident the trolley car may have moved fifty feet did not prove excessive speed, especially as the rails were covered with ice. See Moses v. Northwestern Pa. Ry. Co., 258 Pa. 537. In Harper et al. v. P. R. T. Co., 258 Pa. 283, the car ran three hundred feet after the accident; this, we held evidence of excessive speed; and the same in Kuhns v. Conestoga Traction Co., 290 Pa. 303, 307, where the car ran from one hundred to one hundred and seventy-five feet.

Furthermore, the real cause of the accident was not speed but the fact that the rear wheel of Martin's car failed to clear the rail and in that position was dragged along until it collided with the oncoming trolley car. The driver of the towing car knew nothing of the peril and Martin was unable to stop his own car or communicate with him. It all happened quickly; the rear car was dragged the fifty feet in less than two and one-half seconds and so far as appears would have crashed into the trolley car had it been stopped meantime. There is nothing to indicate that the Martin car would not have been dragged along the rail a further indefinite distance but for the collision. Had the street car been standing at the point of collision, the accident would have happened just the same; hence, its speed was not the proximate cause; therefore, even if excessive, it would not render the defendant liable. As stated by the present Chief Justice, when in the lower court, in Eastburn v. U. S. Exp. Co., 225 Pa. 33, 37 (in an opinion adopted by this court) : "The rate of speed at which the horse was going is really immaterial, for a review of the testimony

leads one irresistibly to the conclusion that the sled suddenly darted out and struck the wagon under such circumstances that it cannot be justifiably said that the driver, as an ordinarily careful man, was bound to have seen and avoided the collision. ...... We cannot hold drivers to be negligent when their only fault is a failure to avoid a collision under circumstances which are unusual and not likely to be anticipated." An automobile has an undoubted right to temporarily occupy the track of a street railway and when it does it is the duty of the driver of an electric street car to exercise all reasonable care to avoid a collision. Plaintiffs failed here to show the motorman did not exercise such care. It is the lack of due care, not the happening of the accident, that causes liability. The street car could not leave the track, neither could the Martin car under the abnormal conditions; this necessarily caused a collision unless both stopped, and plaintiffs contend neither did. Because of its rapid movement an automobile can ordinarily get out of danger in much less time than a horse-drawn vehicle. Traffic necessarily moves with that thought in view.

Occupants of both the towing and the towed cars testified they saw the street car when three hundred feet away, so whether or not its gong was sounded is of no moment: Harper et al. v. P. R. T. Co., supra. So, on the other hand, the motorman naturally understood the sounding of the horns on the automobiles, if in fact he heard them, was for the Tenth Street crossing.

It is urged, however, that owing to the icy condition of the pavement it was the motorman's duty to so control his car as to avoid injury to any vehicle that might suddenly skid in his path. To so hold would practically prevent the operation of electric street cars in busy districts whenever streets were slippery from snow, ice, rain, or other cause, or render street railway companies insurers against accidents happening under such circumstances. Of course, the possibility of skidding is a mat-

ter to be considered by all persons using vehicles on slippery streets, but there is no presumption that any chauffeur is going to so drive his car that it will land in front of an approaching trolley car. When such event occurs an accident may be inevitable. The motorman must ever be on the alert, but is not required at all times to so control the car as to prevent the possibility of an accident. Mr. Justice KEPHART, speaking for the court, in Weschler v. Buffalo & L. E. T. Co., 293 Pa. 472, 476, 477, says, inter alia: "In no case brought to our attention, or that we have been able to discover, have we laid down the hard and fast rule that it is the duty of the driver to have his car under such control that under any and all circumstances he could stop it to avoid an accident. ...... Where danger appears in the way, it must be a sufficient distance from the car, and give time enough to enable the operator to stop or slow down to avoid an accident." While Mr. Justice ELKIN, speaking for the court, in Tatarewicz v. United Traction Co., 220 Pa. 560, 562, 563, says, inter alia: "It is not the duty of a street railway company to anticipate and provide against every exigency or possible contingency that may suddenly arise in the operation of its lines, but that it performs its whole duty by the exercise of care according to the circumstances. ...... It is the duty of a motorman to keep a constant lookout ahead, and to have such control of his car as to avoid dangers ordinarily incident to its operation, and also to avoid such unusual and unexpected dangers as he saw in time to avoid." See also Flynn v. Moore, 88 Pa. Superior Ct. 361. True, the motorman must hold strictly to his work and not for a moment turn away his eyes or his thoughts from his duties. See Schnur v. Traction Co., 153 Pa. 29; Smith v. Phila. Traction Co., 3 Pa. Superior Ct. 129, 137.

In Trumbower v. Lehigh Val. T. Co., 235 Pa. 397, where a recovery was sustained, plaintiff could not drive his team from the track except at certain places, because

of the deep snow of which the motorman was fully aware. While in Gordon v. Beaver Val. Traction Co., 247 Pa. 248, the plaintiff was not given time to drive his wagon from the track.

We do not rule this case against plaintiffs on any question of contributory negligence, but taking the most favorable view of plaintiffs' evidence, it did not meet the burden of proof necessary to fix liability upon the defendant.

The judgment is reversed and is here entered for the defendant non obstante veredicto.