## Petri *v.* Pittsburgh Railways Co. et al., Appellants.

Argued September 29, 1937. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*D. H. McConnell*, with him *J. R. McNary*, for appellant (No. 119).

*James J. Burns, Jr.,* with him *Gustav M. Berg,* for appellant (No. 122).

*Bresci R. P. Leonard,* for appellee.

OPINION BY MR. JUSTICE BARNES, November 22, 1937:

The plaintiff, while riding as a passenger in a street car of the Pittsburgh Railways Company, was injured when the street car and a truck of the Sausage Manufacturing Company collided near the middle of the Sixteenth Street bridge, in the City of Pittsburgh.

The bridge spans the Allegheny River and connects Sixteenth Street with the north side sections of the city. It is 2,100 feet in length, including approaches, with a roadway from curb to curb of approximately 38 feet. On the bridge the railway company maintains a double set of car tracks running north and south. On either side of the car tracks is a cartway 11 feet in width from rail to curb line.

The accident occurred on February 13, 1932, about 6:15 p. m., while plaintiff was riding in a street car northbound across the bridge. She was seated on the left side thereof on the long seat next to the motorman, and had turned so that she was facing the front of the car. It was a one-man operated trolley car.

Immediately prior to the accident the street car was proceeding across the bridge at a high rate of speed. Witnesses describe the speed at thirty to thirty-five miles an hour. The motorman testified that the car was being operated at full power, which he stated was twenty to twenty-five miles an hour. It appears from the evidence that when the street car was about one-fourth of the way over the bridge, a truck of the Sausage Company came upon the bridge from the opposite end. When first seen by the witnesses, who were passengers in the street car, the truck was at the north end of the bridge, traveling south in the rails of the southbound tracks. Running parallel with it, and occupying the cartway to

the right of the truck was an automobile described as a Willys Sedan. It was testified that the truck and the sedan appeared to be racing, as both approached the front of the street car at excessive speed.

With only a distance from 100 to 150 feet remaining, the driver of the sedan turned his car toward the truck, forcing it to the left, so that its left wheels entered the rails of the northbound tracks upon which the street car was being operated. The street car and truck, both traveling at high speed, remained in this position until a head-on collision occurred. After the impact the truck scraped along the left side of the trolley car, and finally came to a position behind the car. The street car continued about one length after the accident, before it was brought to a stop. The driver of the sedan turned his automobile about when the collision occurred, and escaped from the scene of the accident without being identified.

The plaintiff received serious injuries as a result of the collision, and in this action to recover damages she alleges concurrent negligence on the part of defendants. The jury returned a verdict against both defendants. The court refused defendants' motions for judgment non obstante veredicto, and, upon plaintiff's filing a remittitur of a part of the verdict, the rules for a new trial were discharged. Both defendants have appealed from the order refusing their motions for judgment.

The question upon this appeal is whether the evidence of negligence was sufficient to warrant the submission of the case to the jury as to both or either one of the defendants. The railway company denies that it was guilty of negligence. It asserts that there was nothing its motorman could have done to prevent the accident. Its contention is that the accident was caused by the sedan forcing the truck onto the street car tracks, and it argues that even though the street car had been stationary the collision would have been inevitable.

However, from the testimony of witnesses who were passengers in the car, it appears that the trolley car was being operated in a reckless and negligent manner. The fears of the passengers were aroused by the speed at which it was traveling across the bridge. One witness looking to the front of the car saw the motorman "arranging transfers," and giving no attention to the operation of the car. This witness states that, although the truck was approaching at high speed with its two left wheels over the car rails, the motorman did not look ahead again until a collision was imminent, when he attempted to apply the brakes and was unable to stop the car in time to avoid the accident.

Another witness corroborates this testimony. He says that the street car was being operated so fast that he put aside his newspaper to watch the motorman. He likewise saw the truck encroach upon the car tracks and continue thereon, and that there was no diminution in the speed of the street car, as the two vehicles approached it at high speed.

The motorman denies that he was proceeding at a speed in excess of twenty-five miles an hour. His testimony is to the effect that when he had reached the middle of the bridge the truck, which was then about fifty feet away, was being driven upon the southbound tracks, and, when some twenty feet away, it pulled over upon the northbound tracks and the head-on collision resulted immediately afterwards. He stated that he did not see the sedan.

The assertion of the railway company that the collision resulted suddenly and unexpectedly as the sedan forced the truck into the street car, is not sustained by a review of the testimony. It seems clear that if the motorman's attention had been focused upon the scene in front of him, instead of being diverted to the "transfers" that he was arranging, and to the coin box that he was checking, he would have seen approaching danger and attempted to stop his car. The evidence sustains

the charge that the speed of the street car was excessive both immediately before and at the time of the accident.

While a common carrier for hire is not an insurer of the safety of its passengers, it must exercise the highest degree of care, vigilance and precaution in their transportation: *Meier v. Penna. R. R. Co.*, 64 Pa. 225; *Niebalski v. Penna. R. R. Co.*, 249 Pa. 530; *Fern v. Penna. R. R. Co.*, 250 Pa. 487; *Bickley v. P. & R. Ry. Co.*, 257 Pa. 369; *Hager v. P. & R. Ry. Co.*, 261 Pa. 359; *Petrie v. Kaufmann & Baer Co.*, 291 Pa. 211; *O'Malley v. Laurel Line Bus Co.*, 311 Pa. 251.

While it is not the carrier's duty to anticipate and provide against every exigency or possible contingency that may suddenly arise in the operation of its lines, it is its duty and that of its employees to keep a sharp lookout and be able to stop the car in the face of danger. But such precaution was not taken here by the motorman, otherwise he would have observed the vehicles approaching his car and the encroachment upon the tracks. If his failure to see the truck and sedan was due to inattention, he was negligent; if he did see them, and continued on, he breached the duty of care due to his passengers by deliberately exposing them to danger, when the possibility thereof might have been minimized or avoided entirely by bringing the car to an immediate stop. As we said in *Tatarewicz v. United Traction Co.*, 220 Pa. 560 (p. 563): "It is the duty of a motorman to keep a constant lookout ahead, and to have such control of his car as to avoid dangers ordinarily incident to its operation, and also to avoid such unusual and unexpected dangers as he saw in time to avoid."

Again it is stated in *Beaumont v. Beaver Valley Traction Co.*, 298 Pa. 223 (p. 230): "True, the motorman must hold strictly to his work and not for a moment turn away his eyes or his thoughts from his duties." Recently the present Chief Justice in *Gob v. Pittsburgh Railways Co.*, 320 Pa. 225, defined the duties of parties under circumstances similar to those in the present case.

He said (p. 229) : "The driver of a motor vehicle, however, is required to be vigilant and observe the position of the street car before entering its path. When the driver does not perform his duty and does enter the path of the street car, its motorman cannot heedlessly run it down. He must check the car's onward progress if he has sufficient length of time and space to do so. He should take such precautions to avoid accidents as the circumstances will permit."

In consequence we feel that the finding of the jury that the defendant railway company was negligent is fully supported by the evidence and should not be disturbed.

The defendant Sausage Company seeks to place the entire responsibility for the accident upon the driver of the sedan, asserting that there is no evidence of negligence on its own part. It argues that the fact its truck was speeding does not alone convict it of negligence: *Stubbs v. Edwards,* 260 Pa. 75; *Bloom v. Bailey,* 292 Pa. 348; *Collichio v. Williams,* 311 Pa. 553; *Mulheirn v. Brown,* 322 Pa. 171. It was through no fault of its own, it contends, that its truck was forced into a perilous position: *Amey v. Erb,* 296 Pa. 561; *Murphy v. Neely,* 319 Pa. 437. With this view we cannot agree.

The truck of the Sausage Company was operated with such reckless disregard of harmful consequences that it helped to create the combination of circumstances that resulted in the collision. Indeed, from the testimony the jury was justified in determining that the situation was largely one of its own making. While it is true that the truck was crowded by the sedan onto the northbound car tracks, it was not forced into the collision. It was within the power of the driver to have brought the truck to a stop and averted the accident.

The testimony in this case supports the conclusion that the accident was attributable to the joint and concurrent negligence of both defendants. Here, as in *Stark v. Rowley,* 323 Pa. 522, 526, there was a "negligent

racing of the cars," and the evidence shows that the resulting collision was at least in part due to this defendant's participation in such reckless conduct.

The trial judge in a fair and careful charge that was free of error, submitted to the jury the question of the negligence of each of the defendants. The jury has placed the responsibility for the accident upon both defendants. After a review of the record we are of opinion that the verdict of the jury is sustained by the evidence, and the questions at issue were for the jury alone to determine.

Judgment affirmed.