## Doyle *v.* Philadelphia Transportation Company et al., Appellants.

Argued October 10, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*John J. McDevitt, 3rd,* with him *Bernard J. O'Connell,* for defendant.

*J. Paul Erwin,* with him *Joseph J. Murphy* and *George D. Sheehan,* for additional defendant.

*Louis Marion,* for plaintiff.

OPINION BY ROSS, J., November 12, 1947:

This is an action in trespass for personal injuries sustained by the plaintiff while a passenger on a trolley car of defendant, the Philadelphia Transportation Company. The injuries resulted from a collision between the trolley car and a tractor-trailer of the Black Diamond Wholesale Grocery Company, which was brought on the record by the original defendant as additional defendant. The jury returned a verdict for the plaintiff against both defendants and they have filed separate appeals from the refusal of the lower court to grant judgments n. o. v., each contending that it was not negligent and that the collision and resulting injuries to the plaintiff were occasioned by the negligence of the other.

At about 8 p.m. on January 25, 1946, the trolley car in which the plaintiff was a passenger was proceeding westwardly on Lehigh Avenue in the city of Philadelphia, and at that time a tractor-trailer owned by the additional defendant and operated by its servant was traveling westwardly in close proximity and to the right of the trolley car. The tractor-trailer was composed of two coupled units, the tractor being 10 feet in length and the trailer 20 feet, making an overall length of 30 feet. Between 19th and 20th Streets the driver of the motor vehicle passed the trolley car and when the front part of the tractor was 44 feet and the rear of the trailer about 14 feet in front of the trolley the driver of the tractor-trailer, without observing the position of the trolley or its speed, turned his vehicle into the trolley track. The tractor entered the track but before the trailer could completely do so it was struck by the trolley. As a result of the collision, the plaintiff suffered injuries and this action was brought to recover damages therefor.

The question of the negligence of the driver of the trailer truck requires little discussion, particularly in view of the jury's finding that he was negligent. He testified that when he started to turn to the left into the trolley tracks, he did not look to see where the trolley was but relied upon an automatic "turn signal" on his vehicle, and it is in evidence that the rear of the trailer was struck before it had entirely entered the trolley track. Cf. *Tarbit v. Philadelphia Transportation Co.*, 346 Pa. 234, 29 A. 2d 487, in which the Supreme Court under comparable circumstances held the operator of a motor vehicle involved in a collision with a trolley negligent as a *matter of law*. Clearly in the instant case, the evidence supports the verdict of the jury that the operator of the tractor-trailer was negligent.

The negligence of the motorman must be considered with reference to the passenger in the trolley car. If

her injury was due to the motorman's negligence or to his negligence and that of the driver of the tractor-trailer combined, the plaintiff passenger would be entitled to recover (*Gob v. Pittsburgh Rwys. Co.,* 320 Pa. 225, 181 A. 489) and while a common carrier for hire is not an insurer against accidents to its passengers (*Nebel v. Burrelli,* 352 Pa. 70, 41 A. 2d 873) it must exercise the "highest degree of care, vigilance and precaution" in their transportation. *Petri v. Pittsburgh Rwys. Co.,* 328 Pa. 396, 195 A. 107.

Defendant, relying upon the principle that where danger appears in the way of a trolley car it must be a sufficient distance from the trolley and give time enough to enable the operator to stop or slow down to avoid an accident, i.e., he must have the opportunity to act (*Weschler v. Buffalo L. E. T. Co.,* 293 Pa. 472, 143 A. 119; *Cox v. Wilkes-Barre Ry. Corp.,* 340 Pa. 554, 17 A. 2d 367), contends that the motorman in this case was free from negligence and requests us to say as a matter of law that the motorman did not have an "opportunity to act". There might be merit to defendant's argument if the only evidence of negligence in this case were the distance between the trolley car and the motor vehicle when the front end of the tractor entered upon the track and the time that thereafter elapsed before the collision took place. However, reading the evidence in this case in the light most favorable to the plaintiff and giving her the benefit of every inference of fact reasonably deducible therefrom, it is our opinion that it was for the jury to determine whether the defendant railway company, through its employe, exercised the required "highest degree of care, vigilance and precaution" in the transportation of the plaintiff.

According to the testimony, both vehicles involved in this collision stopped at 19th Street, which was more than 500 feet east of the point of collision. The plaintiff testified that at Garnet Street, which is 265 feet west of

19th Street, the tractor-trailer was gradually getting ahead of the trolley car, traveling between the trolley car and the curb line to the right, so close that "you could have reached out and touched it". The street lights were burning, as were the various lights on the motor vehicle, "two on top of the trailer, five on the cab, two headlights" in addition to "the stop light from the rear". The motor vehicle was 30 feet long, 8 feet wide and, as described by the motorman, "a big high-bodied thing". There was no other traffic in front of the trolley but a car was parked along the right curb. The operator of the tractor-trailer turned on the tracks to avoid the parked car and, at that time when the front end of the tractor was 44 feet ahead of the trolley, adjusted his signal lights—illuminated arrows, one $3\frac{1}{2}$ inches long in the left front fender of the tractor, and the other about $2\frac{1}{2}$ inches long in the rear of the trailer—to indicate a left hand turn into the track. Although the motor vehicle was traveling faster than the trolley, there is no evidence of the distance traveled by either vehicle from the time the front end of the tractor entered the track until the collision.

In addition to his duty of having such control of his trolley car to enable him to avoid dangers ordinarily incident to its operation and also to avoid such unusual and unexpected dangers as he saw in time to avoid, it was the motorman's duty *to keep a constant lookout ahead. Hamley v. Pittsburgh Rwys. Co.,* 345 Pa. 380, 28 A. 2d 911; *Tatarewicz v. United Traction Co.,* 220 Pa. 560, 69 A. 995; *Scholl v. Philadelphia Suburban Transportation Co.,* 356 Pa. 217, 51 A. 2d 732. He was required to "ever be alert" and, as stated by Mr. Justice WALLING in *Beaumont v. Beaver Valley Traction Co.,* 298 Pa. 223, 148 A. 87, at page 230: ". . . must hold strictly to his work and not for a moment turn away his eyes or his thoughts from his duties".

Considered with the other evidence in this case, the motorman's own testimony supports the finding of the

jury that he was negligent. He testified that the collision occurred about a car's length (45 feet) from 20th Street where, having received a signal from the conductor, he was intending to stop, and that at the time of the collision the trolley was going "between 5 and 10 miles an hour"; that there was nothing to obstruct his view ahead but that he did not see the motor vehicle, the tractor-trailer, until the collision. He testified, "The first I noticed the truck was at the impact", and in response to the question, "You did not see any part of this vehicle before you actually came in contact with it?" answered, "That is correct."

We cannot say as a matter of law that the motorman was "alert" and that he "kept a constant lookout ahead", and neither can we say as a matter of law that he could not have avoided the collision. The question of his negligence was for the jury.

Judgment affirmed.