Merrimack,
Dec. 2, 1947. } No. 3697.

CHARLES H. MACK *v.* ARTHUR J. HOYT.

*Robert W. Upton* and *Frederic K. Upton* (*Mr. Frederic K. Upton* orally), for the plaintiff.

*Sulloway, Piper, Jones, Hollis & Godfrey* (*Mr. Piper* orally), for the defendant.

JOHNSTON, J. The highway at the scene of the accident consisted of two cement lanes, each nine feet in width. Adjoining the lanes were tar shoulders from three to three and one-half feet wide. The latter were bordered by gravel shoulders about five and one-half feet wide. The gravel shoulder on the west side was formerly a street railway road bed which had been filled. Next beyond this shoulder on the west was a level area of grassed-over gravel, which extended for a considerable distance north and south of the place of the accident and was approximately fifteen feet in width. The shoulders and the grassland were practically the same level as the cement roadway, although there was a slight westerly grade of the shoulders on the west to allow for drainage, and they were covered with snow. The road grade was slightly downward for southbound travelers. The highway was slippery.

As the plaintiff approached the truck, which might be found to be in the center of the road or very near it, he turned to his right to provide a safe margin of clearance and slowed down. His right wheels may have crossed onto the shoulder. After passing the truck, the plaintiff regained the cement traveling, he testified, at a speed of 15 to 20 miles an hour. As he did so, the rear wheels immediately skidded to the left, and the rear of the car slid sideways into the west lane. The car pointing to the northeast, skidded up the highway without further rotation.

The defendant testified that he saw the plaintiff's car as it began to skid and that he knew that the plaintiff was helpless to take saving action. He claimed that he immediately applied his brakes but was unable to avoid the collision, which took place about three feet to the west of the center line of the highway. The defendant's left front fender struck the left door of the plaintiff's car. The car of the former stopped about a length south of the point of contact, while it could be found that the car of the latter was driven back from 50 to 75 feet.

The parties do not agree concerning the speed of the defendant's car. The defendant says that it was 15 to 20 miles an hour while the plaintiff testified it was 30 to 40 miles an hour, the same speed as that of the truck. The defendant cannot be held liable because of the

speed of his car prior to his seeing the skidding Terraplane. Due care does not require that one reduce one's speed or take other precautions in the case of risks that are not perceivable or expectable. *Bolduc* v. *Stein, ante*, 89; *Martin* v. *Hodsdon*, 93 N. H. 66, 69, and cases cited. The risk of another motor vehicle skidding into one's path is ordinarily such a risk and was in the present case prior to the start of the skid. In *Beaumont* v. *Company*, 298 Pa. 223, it was held that there was no duty on a motorman to so control his car as to avoid injury to any vehicle that might suddenly skid in his path. The following quotation from an earlier case, *Tatarewicz* v. *Company*, 220 Pa. 560, 563, was given: "It is the duty of a motorman to keep a constant lookout ahead, and to have such control of his car as to avoid dangers ordinarily incident to its operation, and also to avoid such unusual and unexpected danger as he saw in time to avoid."

There is also conflict in the evidence as to the distance of the defendant's car from the plaintiff's at the beginning of the skid when the defendant saw the car of the latter. The defendant testified that he was 50 feet away and had time for nothing save the instinctive action of putting on his brakes, which he did and nothing else. The plaintiff, however, said at the trial that the sedan was 300 to 400 feet away at this time and claims that there was ample time and ample room for the defendant to have avoided the collision by swerving to his right.

This may not have been the usual skid of a motor vehicle going out of control and abruptly crossing from one side of the road to the other. Generally it is impossible to predict when a skid is going to happen and to avoid the collision after the loss of control and the highway in front of one is blocked. It may not be possible to leave the traveled way or when it is to foresee where the skidding car will go or to keep clear of it. Seldom is there time for reflection.

In the present case it could be found that after the swing of the rear end to the left the defendant's car moved in a constant direction either directly up the highway or at such a slight angle that the defendant by swerving to his right off the cement and shoulders if necessary could have avoided the crash. The testimony of the plaintiff on this point was as follows: "Q. Your car skidded over into the south bound lane. A. The back end of it, yes. Q. Which direction was it skidding? A. North. Q. Skidding up the road northerly? A. Yes. Q. Will you tell us its position in the road as it skidded? A. At an angle, it was kind of headed northeast, that would be. . . . Q. What was your car doing in the meantime? A. Skidding in the same direction and same position as it started. Q. That is skidding northerly?

A. Yes.   Q. At an angle in the road?   A. At an angle in the road."

The defendant seeks to nullify the effect of the rule that in passing upon a motion for a nonsuit only the evidence that is most favorable to the plaintiff should be considered by argument that the testimony of the plaintiff that the sedan was 300 to 400 feet away at the beginning of the skid is not worthy of belief.   It is true that some three months after the accident the plaintiff signed and certified that he had read a statement in which he appeared to have said that when he first saw the Buick it was a hundred feet away.   He explained this by saying that the statement was written by another, that a mistake was made and that "yards" should have been written instead of "feet."   The case of *Hersey* v. *Fritz*, 91 N. H. 484, is cited in support of the defendant's position.   There it was held that the passenger plaintiff's testimony of very fast speed on the part of the defendant was not worthy of credence when she had previously stated that the defendant was not going fast but was driving carefully.   In the case at bar the plaintiff's wife corroborated his testimony given at the trial by testifying that sometime after the car went into the skid her husband said they were going to be run into, and that three or four seconds afterwards the collision occurred.   The issue of the distance of the defendant from the plaintiff at the start of the skid and so the time that he had for saving action was for the jury.   *Mooney* v. *Chapdelaine*, 90 N. H. 415; *Sullivan* v. *Sullivan*, 91 N. H. 341.

Whether the plaintiff was in the exercise of due care as he passed the truck and in his attempts to regain control of his car was a jury question.   He was trying to avoid danger.   It cannot be ruled as a point of law that he failed to use as much care as the ordinary person of average prudence.

Moreover, in view of the evidence that the defendant was 300 or 400 feet away at the start of the skid, the plaintiff is entitled to have submitted to the jury the doctrine of the last clear chance.   The defendant testified that he knew of the plaintiff's danger and of his inability to save himself.   After being aware of these facts the defendant must have a clear chance to avoid the accident by the exercise of due care, in order that the doctrine may apply.   *Clark* v. *Railroad*, 87 N. H. 36; *Ramsdell* v. *Company*, 86 N. H. 457; *Morrison* v. *Railroad*, 86 N. H. 176, 181.   The jury could so have found.

The motion for a nonsuit was improperly granted.

*New trial.*

All concurred.