## Gob *v.* Pittsburgh Railways Company, Appellant, et al.

Argued October 14, 1935. Before FRAZER, C. J., KEP-HART, SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*William A. Challener,* for appellant.

*J. Thomas Hoffman,* for appellee.

OPINION BY MR. JUSTICE KEPHART, November 25, 1935:

Plaintiff was a passenger on defendant's street car traveling east on Penn Avenue in Pittsburgh. Between the street car and the curb, traveling in the same direction, were two automobiles followed by a truck, the latter owned by Beck, the other joint defendant. After passing Dennison Street, where a stop light retarded their movement, the motor vehicles proceeded to pass the street car. As they drove east along Penn Avenue an automobile parked in the cartway, blocked travel between the street car tracks and the curb. The two automobiles passed the parked car ahead of the street car in safety. The truck driver did not see the parked car until the two automobiles had cleared it, which was within fifty feet of the parked car. In the truck's effort to pass, a collision occurred between it and the street car, injuring plaintiff who was seated in the front

part of the street car. He recovered a judgment against the traction company, defendant, and this appeal followed.

The circumstances attending the accident were in serious dispute. Appellee, the passenger, said the truck had passed the parked car one hundred to one hundred and twenty-five feet ahead of the street car when it ran into the rear of the truck causing his injury. Appellant's evidence showed the truck running alongside the street car and when the two machines had cleared so as to permit observation, the parked car loomed up. Unable to get around it and to avoid a collision the truck driver put on his brakes. The cartway being slippery and in bad condition for travel due to snow and ice, the truck skidded, the rear struck the street car on the side, and the force of the impact then propelled the truck against a pole on the side of the street. The truck driver testified he was a hundred to a hundred and twenty-five feet ahead of the street car when he looked in his mirror to ascertain its location. He then safely turned his car on the track and was on it when the car was struck in the rear. The distance the street car was from the front part of the truck when it entered the path of the trolley is not stated. He admits the slippery condition of the road and that his truck was going from twenty-five to thirty miles an hour when he was fifty feet from the parked car. He also admitted that shortly after the accident he deliberately gave the traction company's agent an account of the collision, which corroborated the motorman's story, in the presence of Beck, his employer, joint defendant. His testimony, however, differed entirely from the statement given to the company's agent. The question of the negligence of both defendants was submitted to the jury who found for the passenger against the traction company, but exonerated Beck. The court, under the evidence, could not hold that the truck driver alone had been guilty of negligence or that appellant was not negligent.

Appellant complains of the manner in which the case was submitted to the jury. It is urged that in the charge the jury was instructed that it was the duty of the motorman to anticipate and guard against the negligent act of the driver of the truck, and that the "motorman should have apprehended that he [the truck driver] was coming on there [the track]," and that it was his duty to have done what was possible to avoid a collision. Of course, had this instruction stood alone and had reference to the truck as it was driving alongside the street car, it was error.

A motorman is not bound to anticipate that a motor vehicle traveling alongside may dash out in front of the street car, or that when such vehicle approaches an object in its path, it will not stop but will turn on the track in front of the car. To hold otherwise would completely abolish the doctrine of superior right of way and would jeopardize riders of street cars. The motorman could not anticipate, much less foresee, such hazardous movement on the part of a driver. The motorman was not bound to anticipate that the motor vehicle driver would do a negligent act. While a street car has not the exclusive right of way, it has the superior right of way and, as stated in Ruthberg v. P. R. T. Co., 300 Pa. 536, the street car had the legal right of way. There was no occasion for the car to stop when there was no indication of danger. "While street car companies have not the exclusive right of way to trolley tracks, their rights are superior to those of the traveling public and their cars have the right of way": Ruthberg v. P. R. T. Co., supra, at 539. Persons driving motor vehicles alongside of street cars are under the same duty upon entering the path of the street car as they are under when crossing the street at an intersection in front of an approaching trolley car.

When a traveler in an automobile approaches a street intersection where a street car is approaching he must observe the distance the car is away before attempting

to cross the track: Smith v. Lehigh Valley Transit Co., 296 Pa. 212, 214; see Dopler v. Pittsburgh Railways Co., 307 Pa. 113, 118. The same rule applies to motor cars turning on street car tracks ahead of a car. The motorman has no reason to expect a driver of a motor vehicle will not give the street car a clear track. He was entitled to assume that he would do so: Wilkerson v. Pittsburgh Railways Co., 309 Pa. 381, 384.

The motorman, however, is under the same duty as to a motor vehicle entering the path of the street car between crossings or in an open highway as he would be under circumstances where such vehicle appears on the track ahead of him. If, on its appearance in his path, he has a sufficient length of time and space within which to stop or check his car, he must do so. In determining this problem the relative distances, the place where the movement is attempted, the speed of the car, its weight, and its confinement to one track must be taken into account.

The speed of the street car in this case was not an element of negligence. It was running on a straight track with no intersecting streets or houses on either side of its path.

A motorman is not required to give notice of its approach to automobiles traveling in the cartway alongside or outside the path of the street car; otherwise there would be a constant clanging of bells. The driver of a motor vehicle, however, is required to be vigilant and observe the position of the street car before entering its path. When the driver does not perform his duty and does enter the path of the street car, its motorman cannot heedlessly run it down. He must check the car's onward progress if he has sufficient length of time and space to do so. He should take such precautions to avoid accidents as the circumstances will permit: Beaumont v. Beaver Valley Traction Co., 298 Pa. 223, 230.

The mere fact that the driver of the motor vehicle held out his hand to warn the motorman that he was about to enter the tracks is of no moment unless the vehicle driver was a sufficient distance away from the street car that he could turn on the tracks in safety. The vehicle driver should remember that the street car has a superior right of way and to veer suddenly in front of the moving street car because the hand is outstretched would not justify the act of turning. These rules are necessary if street cars, which handle the bulk of the travel in the cities, are to move rapidly and reach their destination. The public when traveling in street cars does not surrender its right to the automobile or truck, having at times but one occupant, because, by the gesture of the driver's hand, he attempts to block the passage of the street car.

In determining whether the court committed error in instructing the jury with regard to the duties of the motorman and the truck driver, under the circumstances, requires a further discussion of the accident and the legal relations of the parties involved. There are three versions of the collision according to the testimony of the three main witnesses—the passenger appellee, the operator of the truck, and the motorman. The question of negligence must be considered with reference to the passenger in the car. The accident may have been due solely to the negligence of the motorman as the passenger testified or, according to the testimony of the driver of the car and the motorman, it may have been due to the negligence of one or both of the latter. If the injury was due to the motorman's negligence, or to his negligence and that of the driver combined, the passenger would be entitled to recover since the street car company, a public carrier for hire, owed to him the duty of the highest degree of care. Its obligation to the truck was the duty of ordinary care and the truck driver owed a similar duty to the street car company.

The excerpts of the charge assigned as error taken separately from the main body of the charge would lead to the conclusion that the appellant's complaint is well founded but, when the charge is read in its entirety, it will be found that the court was detailing the truck driver's version of the accident and instructing the jury as to duties based on it. If the charge had been given in connection with the motorman's testimony, which is in direct conflict with that given by the truck driver, of course the instruction would be erroneous. But the entire charge left the impression that if the jury believed the motorman's testimony there could be no recovery, and if they believed the truck driver's testimony, the question would still be for them whether he turned in front of the street car a sufficient distance ahead of it to permit the motorman to stop his car. This was a close question and the jury were adequately instructed thereon. If, from the testimony, it had been clear that when the truck entered the path of the street car in its turning movement to clear the parked car, it was so close that the street car could not have avoided the accident, there would have been no negligence on the part of the motorman and hence the verdict should have been for the appellant. But the last view of the truck driver places the street car from one hundred to one hundred and twenty-five feet away when it was moving in the same direction and turning on to the tracks. As we view the entire charge, the submission adequately covered all the questions involved.

A more serious question, however, appears in the amount of damages given to the plaintiff. The jury returned a verdict of twenty-five thousand dollars, which the court below said was grossly excessive. Plaintiff, thirty-nine years of age, was seated on the right-hand side of the trolley and was thrown across the aisle and struck the side opposite with his right side. He continued to work but was taken back home and was in bed ten days and remained around the house four

weeks. He was a marble cutter, earning from ten to twelve dollars a day. He said he had not been able to work at his trade more than a few days from the time of the accident, March 17, 1932. Since that time he worked about a year as a janitor earning from ninety-five to a hundred dollars a month. His attending physician said he had a fracture of the eighth, ninth and tenth ribs at the costal attachment; that these fractures had healed up but the ligamentous attachments to the ribs had not healed. He was in doubt whether he would improve enough to work at his trade or not. Dr. Jackson corroborated, to some extent, this testimony, and Dr. Cazen said that he would undoubtedly be able to work within a year or so. The X-ray examination reads: "examination of the lower ribs on the right side shows comminution of the anterior and of the eleventh [rib]—there is very little evidence of fracture in that rib but there may be more damage in the cartilage, which does not show on the X-ray film." The fractures healed in the customary fashion, so the chief complaint was the spasm of the upper abdominal muscles on the right side.

The plaintiff's expenses resulted in a bill from his attending physician of four hundred and fifty dollars. There is no evidence at all as to his earnings per month or any evidence except a rather general statement as to the time that he worked. It was very unsatisfactory. He had been employed at different places since his injury and we do not regard it as of much significance that he refused to go to work after the institution of this suit. The court below correctly expressed it in saying, "the very guarded medical testimony on the part of the plaintiff . . . does not rise to the standard required to sustain a finding of permanent disability." It seems to be admitted that the plaintiff was not totally disabled. The court below reduced the verdict. In doing so it used figures which we think it was not justified in using, that is, that the plaintiff was working two

hundred and fifty days in the year. While the court below did reduce the verdict to twelve thousand five hundred dollars, it did not reduce it enough. It should have been reduced to seven thousand five hundred dollars which is here ordered.

The assignments of error are overruled, and the judgment as modified is affirmed at the cost of the appellant.