## Bowland *v.* Pittsburgh Railways Company, Appellant, et al.

Argued September 28, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Leo A. Nunnink*, with him *J. R. McNary*, for Pitts-burgh Railways Company, appellant.

*Duff, Scott & Smith*, for Borough of Carnegie.

*J. Thomas Hoffman*, with him *Elmer J. Wahl*, for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, October 31, 1944.

This is an appeal from the refusal of the court below of defendant's motions for judgment n. o. v. and for a new trial. Irene Bowland brought an action against the Trustees in Bankruptcy of the Pittsburgh Railways Company and against the Borough of Carnegie to recover damages which she sustained from a fall on the sidewalk in the latter Borough. She was employed in a restaurant, and on June 4, 1941, she and a companion left her place of employment and proceeded eastwardly on Main Street. The first intersecting street was Third Avenue, and just beyond this was the plaintiff's place of abode. Plaintiff alleged that as she was about to step down from the curb on Third Avenue, her foot caught in an iron band which projected from the curb, causing her to fall and to suffer injuries.

On April 24, 1941, a street car of the defendant company jumped the track at Third Avenue and Main Street and caused considerable damage to the sidewalk and the front of a store. The iron band on the curb was torn loose and it projected two or three inches above the curb

for a distance of about eight feet. Shortly after the accident the area was roped off. Plaintiff's witnesses testified that it was not so roped off at the time of the accident, while witnesses for the Borough testified that it was. At the time of plaintiff's fall it was raining and she and her companion were carrying umbrellas. The place of the accident was illuminated by an arc light and plaintiff's excuse for not seeing the projecting iron was that the umbrellas cast a shadow upon it.

There was no evidence as to the cause of the jumping of the track by the street car, or of any negligence on the part of the defendant company, but there was offered in evidence an ordinance of the Borough of Carnegie, which had been accepted by the defendant company, and this provided that in case of injury to any person or property at anytime, or in any manner, by reason of the construction, repairs, maintenance, or operation of the railway system, the company would indemnify and save harmless the Borough from all liability, costs and expenses arising therefrom. At the trial the respective counsels for the plaintiff and the two defendants stipulated that if plaintiff was entitled to a verdict it should be against the Borough of Carnegie alone, with liability over in favor of the Borough and against the railway company. The effect of this stipulation was to limit the case to a question of negligence on the part of the Borough.

The jury returned the verdict of $3,000 in favor of the plaintiff and against the Borough and a verdict over in the same amount in favor of the Borough against the railway company. This appeal followed the court's refusal of the motions above referred to.

The contention of the appellants is that the plaintiff was guilty of contributory negligence. As to this, Judge McNAUGHER, of the court below, said: "Plaintiff asserted that she had been looking where she was going, that there was a heavy downpour of rain, and that the umbrella which she was using, together with the rain,

greatly reduced visibility. Under the circumstances, taking account of the fact that the object over which the plaintiff tripped was dark and not easily observable, we cannot say as a matter of law that the plaintiff was guilty of contributory negligence."

Appellant cites these cases: (1) *Lane v. Dickinson,* 276 Pa. 306; (2) *Davis v. Wilkes Barre,* 286 Pa. 488; (3) *Mulford v. Philadelphia Rapid Transit Co.,* 310 Pa. 521; (4) *Roth v. Verona Borough,* 316 Pa. 279; (5) *Brown v. Philadelphia,* 267 Pa. 183; (6) *White v. Harrisburg,* 342 Pa. 556; (7) *Lewis v. Duquesne Inclined Plane Company,* 346 Pa. 43; (8) *Hellriegel v. Kaufmann & Baer Company,* 337 Pa. 149; (9) *Lautenbacher v. Philadelphia,* 217 Pa. 318; (10) *Malloy v. Castle Shannon Borough,* 344 Pa. 469; and *Allshouse v. Wilkinsburg Borough,* 343 Pa. 323.

In No. 1 the facts were the plaintiff fell on a driveway in "broad daylight with the walk and driveway perfectly visible." In No. 2 "the plaintiff stumbled upon a mound of ice on a sidewalk without looking or attempting to go around it and without heeding the warning of a companion." In No. 3 "the accident occurred about noon on a bright, clear day. The depression in which the plaintiff stepped was about six or eight inches deep and about the size of a manhole cover. It was plainly visible." In No. 4 "the accident occurred at high noon of a bright, clear summer day. Plaintiff testified that she 'knew the sidewalk was rough and uneven, it really wasn't fit to walk on.' She also testified she saw the hole that day 'when it was about twelve feet away.'" In No. 5 "plaintiff testified she was looking ahead and saw the pool of water before stepping into it, but could not tell it covered a hole deep enough to cause a fall. When asked why she did not walk on the 'other part of the pavement,' she replied, 'I did not think of it.'" In No. 6 the plaintiff tripped and fell on a band of macadam 3½ inches high over the blocks which extended parallel to the curb. "She testified that as she

proceeded to cross the street she was looking for traffic, 'I was not looking at the cartway. I was not looking down at all. I was watching for traffic.' " In No. 7 the plaintiff was injured while leaving an inclined plane car of the defendant company on a clear afternoon. The car stopped with its floor about three inches below the level of the station platform. She admitted that "she examined the situation and could see that the floor of the car was a few inches under the level of the platform." In No. 8 this court held that "plaintiff's own testimony establishes the fact that she walked heedlessly along with the crowd of persons using the entranceway, with no regard whatsoever for her safety, and utterly oblivious of all possibility of danger." In No. 9 the plaintiff testified that "she slipped into a hole and fell while she and her sister were carrying a lounge, about five feet in length and about fifty pounds in weight. The top part of the curve of the lounge, or the pillow part, was in front of her and reached to about her mouth." She was looking straight ahead when she fell. In No. 10 the plaintiff while carrying her baby in her arms "in the afternoon of a clear day" stepped into a depression in the pavement and fell and was injured. "She said she noticed 'part of the broken sidewalk' as she approached, but 'didn't see the hole.' She gave, as the excuse for not seeing it, that 'the baby was obstructing my view.' She admitted that she 'could move her and look down.' " In No. 11 the plaintiff "on a bright, clear day tripped over a section of concrete sidewalk which was raised approximately two and one-half inches above the section adjoining it. There was nothing to conceal the irregularity but the plaintiff testified that he did not see it because the two sections of sidewalk were of the same color and because he was hurrying toward Pitt Street which he intended to cross and was part of the time engaged in making observation of traffic conditions along that street." In all these cases the plaintiffs were adjudged, as a matter of law, to be guilty of contributory

negligence. The facts of all these cases distinguish them from the case at bar, though the facts in No. 10 make that case not so clearly distinguishable as the facts in the other cases. However, there is sufficient difference between that case and the one now before us as not to require us to hold that this case is ruled by it.

In the instant case, it was, according to plaintiff's testimony, "pouring down rain" and the umbrellas she and her companion were carrying "shadowed the light off us" and she "couldn't see [the obstruction] because it was raining so hard the street was just teeming with water coming down." Under the circumstances thus detailed plaintiff's negligence, if any, was not so clear that the court could declare it as a matter of law and the question became one for the jury.

This case is ruled by the following cases and the principles enunciated therein apply. In *Bruch v. Philadelphia,* 181 Pa. 588, 37 A. 818, we held that a plaintiff was not in law guilty of contributory negligence where in walking on the pavement he stepped into a hole and was injured when the circumstances were that an electric light which he was facing "so dazzled his eyes that he could not see clearly in front of him and especially could not see the pavement," though plaintiff admitted that a pedestrian "could see it [the hole] by looking at it carefully." In that case we said : "The public walking on the pavements of a large city, are not bound to exercise extraordinary care; care according to the circumstances, is all the law enjoins. They have the right to assume the pavements are reasonably safe, and that they, by the ordinary use of their eyes, at an ordinary pace, can safely walk on them." This statement was quoted with approval by this court in *Mullen v. Welsbach St. Lighting Co.,* 318 Pa. 562, 179 A. 71, where we held that "where the plaintiff and a friend were standing and talking to a third party in broad daylight, and 'as she [plaintiff] turned to the right to leave, she naturally, in order to make room for her companion, who was

standing at her left, took a step backwards and to one side, and thus placed her foot in the hole, which extended nearly half way across the pavement . . . without looking behind her,' " the question of her negligence was one for the jury. In that case we cited *Markman v. Bell Stores Co.,* 285 Pa. 378, 132 A. 178, which held that the fact that a plaintiff who while departing from a store was "burdened with four parcels held in front, extending twelve or fifteen inches from her body to her chin and carried a handbag on the arm" did not make her so clearly guilty of contributory negligence that the court could declare it as a matter of law. In the Mullen case, supra, this court quoted with approval from *Iseminger v. York Haven W. & P. Co.,* 206 Pa. 591, 594, 56 A. 66, the often reiterated principle that "It is only in clear cases where the facts and the inferences to be drawn from them are free from doubt that the court is warranted in saying that there was contributory negligence."

In support of the motion of a new trial the only argument advanced was that the verdict was excessive. The plaintiff, who was 48 years of age at the time of the accident, was earning $10 a week as a waitress. She also said she received some tips but did not state what these amounted to. By reason of her injury she had to have the semilunar cartilage of the right knee removed. Dr. Wallace, her physician, testified that she now has a "good knee," that she has a knee "that is usable and to all intents and purposes effective," but he said there are still some complaints by the patient that she has some symptoms of weakness and pain" which the doctor could not verify, though he "was not ready to deny what the patient said was true." He estimated that within a period from 6 to 18 months after the trial the difficulty of the plaintiff ought to be cleared up. There was testimony that there was a doctor bill of $48, another of $200 and a hospital bill of $90.30. Plaintiff has not gone back to a steady job but there is no proof that this was

418

due to any physical disability. Our conclusion is that the verdict in this case was excessive and that an award to the plaintiff of $2000 plus $338.30 for her hospital and physicians' bills is as much as is warranted by this record.

The judgment is reduced to $2338.30 and as modified is affirmed.