## Logue *v.* Potts Manufacturing Company, Appellant.

Argued January 10, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*John D. Faller, Jr.,* for appellants.

*Joseph J. McIntosh,* with him *J. Boyd Landis* and *Landis & McIntosh,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 21, 1955:

In a trespass action following an automobile accident, liability was admitted. Two questions are raised by the appeal of defendants (1) was it error to overrule objection to testimony contradicting in some particulars the testimony of a physician who had been excused the previous day upon the completion of his testimony? and (2) was the verdict excessive?

On defendants' motion for new trial the learned trial Judge succinctly stated defendants' objection: ". . . Counsel for the defendants objected to the introduction of any testimony that would in any way contradict [the defendants' expert physician witness] on the ground that he should have been put on notice of any intent to contradict the doctor, so that he might have kept him present at the trial, and that since plaintiff's counsel had agreed to the doctor being excused,

it would be taking an unfair advantage to offer testimony contradicting him. . . ."

The court gave the following reason for overruling the objection: "The precise legal proposition for which the defendant contends is that when a witness has been excused by agreement of counsel, the other side cannot thereafter introduce any testimony tending to contradict him. We know of no such rule, nor do we believe that such a rule would be desirable. It would substantially end the practice of excusing witnesses after they have testified. This would be particularly objectionable in the case of doctors, who are frequently called out of order and excused immediately after leaving the witness stand."

We affirm this ruling. When counsel agrees to excuse a witness and the witness retires, no rule of law exists, or should be promulgated, whereby the other side is foreclosed from producing testimony which may contradict prior testimony. Unless counsel is willing to assume this risk the witness should be required to remain in court and not be discharged.

Defendants contend that the verdict is excessive. It is $8,422, made up as follows: hospital and medical bills $74; loss of wages $219; damages to automobile $1,100 and general verdict for pain, suffering and alleged disability $7,029. Both plaintiff and defendants agree on these figures. The sole question is whether, under the testimony, the amount of $7,029 is excessive. While we agree with the learned trial Judge that the true cause of defendants' dissatisfaction is the jury's acceptance of the diagnosis and prognosis of the doctors called by plaintiff and the rejection of the testimony of defendants' doctor that there was no residual disability or permanent damage to the knee, nevertheless we are of opinion that under all the testimony the sum of $7,029 is excessive. We therefore reduce this

amount to $5,029 and affirm the judgment in the sum of $6,422.

The judgment, as modified, is affirmed.

––––––

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

I dissent from the Majority's decision to reduce the verdict from $8,422 to $6,422.

My judicial spectacles are not equipped with such microscopic and diagnostic lenses as will show me that $8,000 is so grossly excessive as to shock my conscience and that $6,000 is, by every rule of law, medicine and logic, just right. The plaintiff suffered a serious injury to his right knee cap. He will have a 15% limitation in the use of that knee for the rest of his life. (Being 24 years of age he has a life expectancy, according to Standard Mortality Tables, of 43 years). Dr. F. S. Mainzer testified that if the plaintiff attempts to run or jump "his knee may give out." The plaintiff testified that his knee "feels like you have a real bad headache in your knee. You get a thumping." Climbing steps, as he must in his work, he experiences considerable discomfort and pain.

The Majority enumerates the items of expense to which the plaintiff was subjected as the result of the defendant's negligence, but this expenditure is not the most reliable touchstone for determining a just and adequate verdict. The plaintiff testified that at the time of the trial he had not received all his doctor bills. But even so, the total medical expense does not constitute the infallible test for ascertaining the extent of a disabled person's future losses. A man with a leg amputation may have a comparatively small medical expense and if he has a sedentary occupation he may earn as much, and even more than he did prior to the accident.

But who would say that with a leg gone, one has not suffered a major physical catastrophe and is not entitled to an award of damages in no way dependent upon the actual amount of medical expense? A man with an amputated limb or with a disabled knee joint will be one of the very first to be released from remunerative work in an economic slump and he will be the last to be reemployed when the wheels of prosperity begin to turn again.

This Court has said with the monotony of a broken phonograph record that "the question of the amount of the verdict will be reviewed only in cases where so grossly excessive as to shock our sense of justice." In these days of ever-rocketing living costs, the margin between $8,000 and $6,000 (where a serious injury is involved) is not such a sum as shocks my sense of justice. The swing of a knee hinge cannot be measured with such precise monetary calipers that one can say with mathematical certitude where the free arc ends which makes $8,000 shockable and $6,000 just right. It is for that reason that I would leave the verdict where the jury put it, and where the lower court refused to molest it.