Griest *v.* Playtown, Inc., Appellant.

Argued January 23, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*George J. McConchie,* with him *Cramp and D'Iorio,* for appellant.

*Angelo A. Di Pasqua,* with him *Caine & Di Pasqua,* for appellee.

Opinion by Mr. Justice Musmanno, March 24, 1964:

Mrs. Elizabeth Griest, 50 years of age, entered the Playtown Park in Chester County with her married daughter and son-in-law with their children, and a friend Mrs. Nancy Ellerbrake, with her two small children, Deborah, age 4, and Susan, age 2. She boarded the merry-go-round with Mrs. Ellerbrake, her son-in-law with his boy Michael 5½, and the two children Deborah and Susan Ellerbrake for the specific purpose of assisting these two latter tots in mounting the horses they were to ride, as the horses, in simulated gallop, made their swing around on the carousel. She approached a row of three chargers and placed Deborah on the middle mount. Mrs. Ellerbrake lifted Susan into the saddle of the first mount surveying the equestrian scene. Her son-in-law placed Michael on the horse moving on the inside track. After Mrs. Griest had strapped Deborah onto her steed, she moved to the rear to step off the platform before the horses, to the accompaniment of rousing music, began their circular charge. She was about to step from the platform, having actually extended her right foot when, without any warning by bell, whistle, or otherwise, the merry-go-round started away on its peripheral journey and she

was thrown from the platform onto the floor beneath. Her participation in the enjoyment of the day ended in a hospital, to which she was taken by ambulance.

She sued the owner of the Playtown Park and recovered a verdict of $20,000. The defendant, Playtown, Inc., seeks a new trial, alleging trial errors.

In cross-examining Mrs. Griest and Mrs. Ellerbrake, defendant's counsel asked about safety straps which these women testified were attached to the horses. The manager of the amusement park testified that there were no such safety straps. In his charge to the jury, the trial judge, in speaking of the hazards in an amusement park, said: "The question of whether such precautions, such as safety straps, ringing of bells, sounding of warnings are necessary, and whether the lack of them constitutes negligence, considering the character of the device, its use and all the other circumstances, is a question of fact for you, the jury."

The appellant complains that this statement constituted error because the judge mentioned safety straps which were not involved in the accident. The cited remark, however, was merely a ray of explanation thrown onto the screen of enlightenment to illumine and clarify the whole general subject so that the jury would be thoroughly at home in its discussions. After his general explanatory instructions, the judge specifically pointed out the specific issue of negligence in controversy by stating that it was the contention of the plaintiff that as "She was in the process of alighting from the merry-go-round, the defendant's operator caused the machinery to be set in motion without any warning, as a result of which the plaintiff, Mrs. Griest, was thrown to the ground . . . she charges that this defendant was negligent in the manner in which it permitted its merry-go-round to be operated, in that the defendant either did something which an ordinarily prudent person would not have done under the cir-

cumstances; that is, that its operator started the machinery at a time when she was in the act of stepping off the merry-go-round; or that it failed to do something which a reasonably prudent person would have done under the circumstances . . ."

The jury could not possibly have misunderstood what it was to decide, particularly in view of the fact that immediately after outlining the plaintiff's contention the judge pointed out the defendant's position: "Now the defendant comes forward and denies that the plaintiff's injury resulted from any negligence on its part; and it avers that a warning bell was sounded before the equipment was in motion. To paraphrase the defendant's contention, the defendant says to you, we did give a warning by sounding the bell of our intention or our operator's intention to start this machine, this merry-go-round; and they say to you, in effect, if therefore Mrs. Griest was injured, it was because she attempted to step off the platform of this merry-go-round at a time when it was in motion, and therefore she was guilty of contributory negligence and should not recover."

Prior to the trial, the manager of the amusement park, E. C. Perchalski, stated in answer to plaintiff's interrogatories that the name of the attendant-operator of the merry-go-round was Edward McGill, 20 years of age and a college student. At the trial, the defendant produced as that attendant-operator a Thomas James McGill who, at the time of the accident, was 15 years of age and not a college but a high school student. He testified that immediately before the merry-go-round started on its circumferential expedition he rang a warning bell, threw on the music, and "hollered" "Here you go again." After this audible commotion, the wooden horses marched. In cross-examination this witness stated that he had told Mr. Perchalski when he was employed that he was 20 years of age

and attending college. Later he denied that he had so told Perchalski. Still later he testified that he hadn't even told him he was attending high school. The plaintiff's attorney, in rebuttal, read into evidence the answers of Perchalski to the plaintiff's interrogatories, which contradicted Thos. James McGill's testimony, the purpose being to attack Perchalski's credibility. The defendant objected to this evidence and offers the court's overruling of its objection as another reason for a new trial.

The ruling of the court was correct. It was inevitable that plaintiff's counsel would submit Perchalski's answers to the interrogatories to show the inconsistency between what appeared therein and what was testified to at the trial, particularly in view of the fact that Perchalski did not take the stand to explain the contradictions.[1]

During his summation, plaintiff's counsel took advantage of this situation, almost made to order for oratorical pyrotechnics, and accused Perchalski of perjury. Defendant's counsel points to this as additional trial error, but he did not place on the record the alleged inflammatory remarks of plaintiff's counsel, nor did he say anything about them until the day after they were delivered when, just before the court was about to charge the jury, he moved for the withdrawal of a juror. The court did not abuse its discretion in refusing the motion. (*Menarde v. Philadelphia Transportation Co.*, 376 Pa. 497.)

During the trial the plaintiff placed in evidence life tables of vital statistics showing her life expectancy to be 27.8 years. Defendant's counsel objected, stating that "this is a life expectancy table, not a work expectancy table." The court overruled the objection, stating:

---

[1] The appellant did not object to the reading of the interrogatories into the record for the purpose of impeaching Perchalski. Objection was made only on the ground of relevancy.

"the jury will have to determine whether there is any evidence in this case of any diminution of earning capacity which should be compensated if they determine that the plaintiff should be compensated."

In his charge to the jury, the trial judge devoted appreciable time and attention to the subject of impairment of earning power and made it extremely clear that impairment of earning power was not an item automatically following an injury, nor did it necessarily coincide with longevity. He said: "If you find that as a result of injuries sustained by her in this accident her earning capacity in the future has been impaired, then you must determine to what extent it has been, and whether the impairment is temporary or permanent. And in this connection you should consider the nature of her injuries, her habits of life, the character of her probable employment in the future, the likelihood of her condition improving or getting worse, and the full extent to which her earning capacity may be affected by her injuries if at all.

"If you find her earning capacity has been impaired by the injuries resulting from the accident, then you should determine or you must determine first for how long a period in the future her earning capacity will be diminished as a result of her injuries; and second, to what extent or degree."

Finally, the defendant complains that the verdict of $20,000 was excessive and in that respect finds fault with the trial judge for reading to the jury a portion of the plaintiff's doctor's testimony, including questions by the plaintiff's attorney and the doctor's answers. We do not find from the record that the trial judge in any way emphasized the plaintiff's evidence on disability over the defendant's evidence on the subject.

On the question of the size of the verdict, the trial judge in his opinion stated that he believed the verdict

to be a just and proper one. The plaintiff was in excellent health prior to the accident, as a result of which she sustained a lumbrosacral sprain with musculo-ligamentous decompensation, acute nervous shock or nervous reaction, with contusions and abrasions to both knees, and was unable to work for eight weeks. She was employed as a punch press operator which required the operation of a pedal with the right foot. When she returned to work after the accident she experienced difficulty with jobs that required her to stand and those which entailed heavy lifting. Her coworkers had to assist her in the performance of her normal duties. As a result of her injuries she could not engage in housework which required substantial pulling or lifting, she had difficulty in resting and sleeping, and her condition worsened in damp weather.

The judge summed up her condition by saying: "Considering the injuries sustained by the plaintiff, the effect they have had on her everyday activities, together with the fact that she will have intermittent and recurring low back pain and discomfort for the rest of her life with an accompanying impairment of her earning capacity, we cannot say that the verdict was excessive or shockingly disproportionate to the injuries and losses suffered by her."

The record supports this conclusion.

Judgment affirmed.

Mr. Justice COHEN concurs in the result.