Kemp *v.* Philadelphia Transportation
Company, Appellant.

Argued December 9, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Stuart A. Schwartz*, for appellant.

*Marvin W. Factor*, with him *Weinstein & Factor*, for appellee.

OPINION BY JACOBS, J., March 29, 1976:

The sole issue involved in this appeal is whether the jury's verdict of $15,000.00 for plaintiff, Irma Kemp, was excessive.

The present action arose after plaintiff was injured as a result of slipping and falling in one of appellant's subway cars. Liability was contested at trial but the jury found appellant negligent and awarded damages to plaintiff in the amount of $15,000.00 even though plaintiff's complaint in trespass only requested damages not in excess of $5,000.00.

At trial plaintiff testified in detail as to the extent of her injuries. She stated that after her fall on the subway train in November, 1963 her knee and back started to give her discomfort. Although plaintiff was able to walk away from the area unassisted, she decided to visit a Dr. Atkins that evening. At that time certain medicine was given to her for the pain and she also received a type of heat treatment for her back. Plaintiff continued to see Dr. Atkins on the average of twice a week for a period of

six months. According to plaintiff, the pain in her knee disappeared after about six months, but the pain in her back continued although it decreased in degree. Plaintiff testified that at the present time her back hurt her *occasionally* when the weather was bad, damp, or cold.

Plaintiff was also examined by a Dr. Friedman, a radiologist, who took x-rays of plaintiff's back and knee. Dr. Friedman testified that the x-rays failed to show any fracture or dislocation of the knee or spine and that there was no evidence of spasms in the muscles of the back to support plaintiff's claim of pain in that area. However, Dr. Friedman also admitted that strains and sprains of muscles in the back do not show up on x-rays as well as changes in the bones. Dr. Friedman testified that assuming plaintiff in fact had injured her back, he could not say that the injury would be permanent and could not really say how far into the future the pain would continue. In concluding his testimony, Dr. Friedman added that it was possible for a person to have pain in the back without there being any objective evidence thereof.

The last medical witness to testify was a Dr. DiSilvestro who examined plaintiff on behalf of appellant. He testified that plaintiff suffered a contusion of her lower back and knee from the accident. However, in his opinion there was no sprain or strain in her lower back. Dr. DiSilvestro stated that it was possible that plaintiff experienced pain in her back, but he was unable to objectively locate the cause. According to this witness, the plaintiff had recovered from the contusion of the lower back and he did not expect her to experience any future back pain.

Plaintiff was recalled as a witness and testified that her bill from Dr. Atkins was $345.00 and that her bill from Dr. Friedman was $105.00. According to the plaintiff, she missed a week of work as a lab technician because of her injuries. These lost earnings amounted to $85.00. There was no evidence of any future loss of

earnings. Because plaintiff's "out of pocket" damages amount to only $535.00 and there is no evidence of any future loss of earnings, it becomes evident that the jury awarded plaintiff $14,465.00 for past and future pain and suffering. On post-verdict motions, appellant argued that the verdict was excessive and requested a remittitur. These motions were denied by the court below and this appeal followed.

Where a verdict has been sustained by the lower court, an appellate court will generally not reverse unless the verdict is so grossly excessive as to shock the appellate court's sense of justice. *Connolly v. Philadelphia Transp. Co.*, 420 Pa. 280, 216 A.2d 60 (1966). Nevertheless, it is not uncommon for an appellate court to reduce a verdict which it finds to be excessive under the particular circumstances of the case. *Dornon v. McCarthy*, 412 Pa. 595, 195 A.2d 520 (1963); *Logue v. Potts Mfg. Co.*, 381 Pa. 144, 112 A.2d 370 (1955); *Figlarowicz v. Somerset Elec. Co.*, 360 Pa. 586, 62 A.2d 837 (1949); *Libengood v. Pennsylvania R.R. Co.*, 358 Pa. 7, 55 A.2d 756 (1947); *Bowland v. Pittsburgh Rwys. Co.*, 350 Pa. 411, 39 A.2d 619 (1944); *Meholiff v. River Transit Co.*, 342 Pa. 394, 20 A.2d 762 (1941); *Gob v. Pittsburgh Rys. Co.*, 320 Pa. 225, 181 A. 489 (1935); *Walker v. Davis*, 189 Pa. Superior Ct. 564, 151 A.2d 812 (1959). It is difficult to compare the facts of this case with those of cases appellate courts have decided in the past because each case is unique and dependent on its own special circumstances. However, it is instructive to review the various factors appellate courts have considered in determining whether a particular verdict was excessive.

The first factor courts have considered in their review of verdicts is the severity of the injury. In *Guzman v. Bloom*, 413 Pa. 576, 198 A.2d 499 (1964) the plaintiff received a severe blow to the face during a car accident that required extensive plastic surgery and dental treatment. A verdict of $7,000.00 in favor of plaintiff was upheld. In *Connolly v. Philadelphia*

*Transportation Co.*, supra, the plaintiff was rendered unconscious as a result of the accident and required a long period of hospitalization. The Pennsylvania Supreme Court sustained a $27,000.00 verdict for plaintiff. Large verdicts for plaintiffs were also affirmed in *LaFace v. Brentwood Motor Coach Co.*, 387 Pa. 18, 127 A.2d 93 (1956) where the plaintiff spent 63 days in the hospital and *Kane v. Scranton Transit Co.*, 372 Pa. 496, 94 A.2d 560 (1953) where nine weeks of hospitalization, skin grafting, crutches, and a special shoe were required for plaintiff because of her severe injuries. However, in *Libengood v. Pennsylvania Railroad Co.*, supra, a verdict of $15,721.00 for plaintiff was found excessive and reduced to $9,000.00 where plaintiff was confined to a hospital for only 4 days and the only evidence of injuries were bruises. Similarly, where plaintiff spent only two hours in a hospital and then was sent home with a sedative, the Pennsylvania Supreme Court reduced the verdict which the court below had reduced to $15,000.00 to $10,000.00. *Figlarowicz v. Somerset Elec. Co.*, supra.

Another aspect of a plaintiff's injury courts have taken into account is whether the injury is demonstrated by physical evidence or whether it is only revealed by the subjective testimony of the plaintiff. Where the injury is manifested by broken bones, disfigurement, loss of consciousness, or other objective evidence, the appellate courts have counted this in favor of sustaining a verdict. *Connolly v. Philadelphia Transp. Co.*, supra; *Guzman v. Bloom*, supra; *Mashinsky v. Philadelphia*, 333 Pa. 97, 3 A.2d 790 (1939). On the other hand, when a plaintiff lacks any physical evidence of injury and only supports her allegations with subjective testimony of discomfort, the appellate courts have been more inclined to find the verdict excessive. *See Figlarowicz v. Somerset Elec. Co.*, supra; *Libengood v. Pennsylvania R.R. Co.*, supra; *Hudson v. Grace*, 348 Pa. 175, 34 A.2d 498 (1943); *Brown v. Paxton*, 332 Pa. 260, 2 A.2d 729 (1938); *Walker v. Davis*, supra.

Whether an injury has healed or whether it will affect a plaintiff permanently must also be considered. In *Mashinsky v. Philadelphia*, supra, the Supreme Court refused to disturb a $14,000.00 verdict for a plaintiff where the evidence established that a fractured tibia bone in the leg was not healing properly and plaintiff would have to wear a leg brace and be subjected to considerable discomfort in the future. However, courts have reduced verdicts where the wounds have substantially healed, *Durdella v. Trenton-Philadelphia Coach Co.*, 349 Pa. 482, 37 A.2d 481 (1944); where none of the doctors who treated plaintiff saw any likelihood that the injury would be permanent, *Figlarowicz v. Somerset Elec. Co.*, supra; where there was a conflict in evidence on whether the injury would be permanent, *Logue v. Potts Mfg. Co.*, supra; and where the medical witnesses predicted permanent injury only on the assumption that the plaintiff's subjective complaints were true, *Meholiff v. River Transit Co.*, supra.

The plaintiff's ability to continue with her employment after the injury has occurred must also be reviewed. In *Griest v. Playtown, Inc.*, 414 Pa. 58, 199 A.2d 131 (1964) the Supreme Court declined to interfere with a $20,000.00 verdict for plaintiff where as a result of her accident she was unable to work for eight weeks and when she returned to work she experienced difficulty in performing her normal duties. On the other hand, the fact that a plaintiff has continued at the same employment after the accident with no loss of earning capacity has been noted by some courts in reducing verdicts as being excessive. *See, Brown v. Paxton*, supra; *Walker v. Davis*, supra.

"The mere disparity between the amount of the out-of-pocket expenses and the amount of the verdict does not of itself justify the granting of a new trial [because the verdict was excessive]." *Zawoyski v. Pittsburgh Rwys. Co.*, 415 Pa. 563, 566, 204 A.2d 463, 465 (1964). Still, the appellate courts have considered out-of-pocket expenses

as one of many factors in determining whether a verdict was excessive. Where out-of-pocket expenses were $6,500.00 our Supreme Court upheld a verdict for $27,000.00. *Connolly v. Philadelphia Transp. Co.*, supra. But appellate courts have not hesitated to reduce a verdict where along with other circumstances there was a great disparity between the out-of-pocket expenses and the verdict returned by the jury. *See, Bowland v. Pittsburgh Rwys. Co.*, supra (verdict of $3,000.00 but out-of-pocket expenses of only $338.30); *Durdella v. Trenton-Philadelphia Coach Co.*, supra (verdict of $12,000.00 but out-of-pocket expenses of only $1,508.10); *Walker v. Davis*, supra (verdict of $8,000.00 but out-of-pocket expenses of only $73.00).

One final factor that has been considered by at least one court is what plaintiff demanded for damages when she instituted her complaint. In *Hudson v. Grace*, supra, the Supreme Court noted that plaintiff only demanded $15,000.00 when she brought her suit. The jury, however, returned a verdict for $17,000.00 which the Supreme Court subsequently reduced to $12,500.00.

Applying all these factors, which we find to be relevant in determining whether the verdict was excessive, to the facts of the present case, we observe: (1) Plaintiff's injuries were far from severe; no operations, braces, or other devices were required; nor did plaintiff have to undergo hospitalization; the evidence only indicated that plaintiff visited a doctor for heat treatments for a six-month period, but there was no admissible evidence that she was still seeing the doctor at the time of trial; (2) All medical witnesses agreed that there was no objective evidence of any physical injury to plaintiff; the only evidence of any injury came from plaintiff's testimony of pain in her knee and back; (3) There was no evidence that the pain was *likely* to continue permanently; plaintiff testified that her knee no longer hurt her but her back *occasionally* gave her pain in bad weather; the evidence conflicted as to whether

plaintiff would experience pain in the *near* future, but the doctor who concluded that pain would continue based his opinion on the assumption that plaintiff in fact was experiencing pain even though there was no objective evidence of this; (4) Although plaintiff missed one week of work, there was no evidence of any loss of earning capacity in her employment as a lab technician because of the accident; (5) Plaintiff's out-of-pocket expenses were $535.00 but the jury returned a verdict of $15,000.00; and (6) Plaintiff in her original complaint asked for damages "not in excess of $5,000.00 ...." Printed Record at 5a.

In conclusion, we must hold that a verdict of $15,000.00 under the facts of this case was excessive. Because no trial errors have been alleged on appeal, we are of the opinion that liability was fairly and correctly determined in the court below and refuse to reverse to grant a general new trial. See *Dornon v. McCarthy*, supra; *Meholiff v. River Transit Co.*, supra; *Brown v. Paxton*, supra. Rather than further delay the disposition of this case, which arose in 1963, by granting a new trial on the issue of damages, we will exercise our power to modify the order of the court below. *See* Act of July 31, 1970, P.L. 673, No. 223, art. V, §504, 17 P.S. §211.504 (Supp. 1975-76). We, therefore, reduce the verdict for plaintiff to $10,000.00.

Reversed and the lower court is directed to enter judgment for plaintiff in the amount of $10,000.00.

CONCURRING and DISSENTING OPINION BY SPAETH, J.:

I join the majority's conclusion that when the record is viewed in light of the pertinent cases, the verdict must be found excessive. I dissent, however, from the decision to reduce the verdict to $10,000. In a case of this sort it seems to me that to arrive at a fair figure one must see the witnesses. I would therefore remand for a trial limited to damages. Although it is true that the case is an old one, it does not appear that the delay consequent

upon such a remand would prejudice the parties. In fact, it might well enable the trier to have a better perspective on how serious the injuries were, as shown for example by plaintiff's work and medical records, which would be documentary evidence.

HOFFMAN, J., joins in this opinion.

DISSENTING OPINION BY PRICE, J.:

There is no doubt that an appellate court will generally not reverse unless the verdict is so grossly excessive as to shock the appellate court's sense of justice. This. is particularly so where the verdict has been sustained by the lower court. The trial judge, Judge Gerald A. GLEESON, JR., of the Court of Common Pleas of Philadelphia County, in reviewing the jury's verdict and denying post-trial motions, was not shocked. Nor was the trial judge able to find the verdict excessive because of the jury's sympathy, prejudice or bias. Nor was the trial judge able to declare the verdict excessive as totally unrelated to the extent or type of injury involved.

After a review of this record I can only agree with the lower court. Perhaps as a juror or as a trial judge without a jury I would have reached a different result, but this is not the test to be applied upon appellate review.

I would affirm the entry of judgment in the full amount of the $15,000.00 verdict.