## Haines v. Raven Arms (No. 2)

*Robert C. Daniels,* for plaintiffs.
*Frederic L. Goldfein,* for defendant Donn's Inc.

### SUPPLEMENTAL OPINION

KLEIN, CAESAR, *J.J.,* July 19, 1994—We have been directed to file a "clear explanation of the standard applied in granting a remittitur of the jury award" in the above captioned matter.

Having reviewed our original opinion, we believe that it did accurately express the views of the panel. For convenience, we will restate that opinion and then amplify it with regard to the standard applied.

### A. ORIGINAL OPINION STATING THAT THE REMITTITUR WAS PROPER AND WITHIN THE AUTHORITY OF THE COURT

Defendant Donn's filed a motion for remittitur stating that the pain and suffering award of $8,000,000 was shocking and without justifiable basis. By special interrogatories, the pain and suffering figure was stated

separately from the award of $3,350,802.60 for medical expenses, loss of earnings and care and supervision. Defendant's motion was granted and the award was reduced by the en banc panel to $5,000,000. Plaintiff complains that there should be no remittitur and defendant says it was not sufficient.

As noted, Tamika Haines suffered catastrophic injuries. In essence, she has been deprived of the ability to have normal relationships with other human beings. She suffered major memory loss, loss of cognitive abilities, and has trouble walking and using her arms. She had seven major surgeries. She cannot be left alone for long, for fear that she will wander off and be taken advantage of by anyone who comes along. At the same time, she remembers that she was once normal and has difficulty relating to those who she considers "retarded." Clearly, this warrants a significant award.

On the other hand, she is not in any physical pain, does relate to her family, goes by herself to remedial classes, and can carry out some activities. She is not in the same class as someone who is a quadriplegic or in great constant pain that cannot be treated.

Precisely because this is not a cut-and-dried issue, the trial court asked for a court en banc to consider this issue. Three very experienced civil trial judges including the trial judge (who saw all the witnesses and heard all the facts in detail) heard the motions. While the consensus was that $8,000,000 was excessive considering this case in light of other kinds of catastrophic injuries, the consensus also was that $5,000,000 was not excessive. Certainly there is no magic in setting a figure of $5,000,000 instead of $8,000,000. However, it is asking a great deal of a lay jury to fix a figure in a case like this with no experience and precious little guidance. At least the three judges have a long

background from which to draw when determining what is excessive and what is not excessive. We believed that the jury figure of $8,000,000 was excessive and should be modified. Accordingly, we reduced the pain and suffering award to an amount that we thought to be proper considering her catastrophic injuries.

Technically, there are six factors to be considered by the court in determining whether a jury's damage verdict is excessive: (1) the severity of the injury; (2) whether plaintiff's injury is manifested by objective physical evidence or whether it is only revealed by the subjective testimony of the plaintiff; (3) whether the injury will affect the plaintiff permanently; (4) whether the plaintiff can continue with his or her employment; (5) the size of plaintiff's out-of-pocket expenses and (6) the amount plaintiff demanded in the original complaint. *Stoughton v. Kinzey,* 299 Pa. Super. 499, 503, 445 A.2d 1240, 1242 (1982); *Kemp v. Philadelphia Transportation Co.,* 239 Pa. Super. 379, 361 A.2d 362 (1976). Obviously, there are significant physical and emotional damages, and considerable out-of-pocket expenses. The demand is only partially relevant because it was tempered by questions as to liability. However, *Kemp* provides only limited help in dealing with the specifics of this case. As the *Kemp* court itself points out, it is difficult to compare the facts of different cases "... because each case is unique and dependent on its own special circumstances." *Id.* at 382, 361 A.2d at 364.

It is the responsibility of the judiciary to keep pain and suffering awards within reasonable bounds in a case such as this where the jury cannot help but have sympathy for the plight of the plaintiff. *Daley v. J. Wanamaker Inc.,* 317 Pa. Super. 348, 354-55, 464 A.2d 355, 357-58 (1983). Certainly, *some* figure goes beyond

the reasonable in any case. By agreement of the en banc panel of judges, it was determined that $8,000,000 was excessive, and that $5,000,000 was not an excessive award for her pain and suffering.

## B. CLARIFICATION OF STANDARD APPLIED

It appears from the dissenting opinion originally filed in the above case[1] that we are being asked whether we found that "the verdict so *shocks the sense of justice* as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption." If pressed to apply that standard, we determine that the $8,000,000 verdict "so shocks our sense of justice" so as to suggest that the jury was influenced "by mistake" and by "partiality." (There is certainly no evidence that it was influenced by prejudice or corruption.)

In Black's legal dictionary, a mental shock is defined as "A sudden agitation of the mind; startling emotion, as the shock of a painful discovery, a shock of grief or joy." Webster's definition of the verb shock is "to disturb the mind of emotions of; affect with great surprise...."

That well defines the feelings of the trial judge when the jury first returned its verdict of $8,000,000 for pain and suffering *over and above* the verdict of $125,802.60 for medical expenses; $725,000 for loss of earnings, and $2,500,000 for care and supervision, a total of $3,350,802.60. This also was the feeling of the other signatory to this clarification when first learning all the facts. The discussions of settlement for this case were in the range of $1,000,000 to $1,500,000, and defendant Donn's Inc. could have settled for under $500,000. While there was discounting for liability, nei-

---

1. *Haines v. Raven Arms,* 536 Pa. 452, 640 A.2d 367 (1994).

ther the trial judge nor counsel expected the verdict of $11,000,000.

The rest of the *Carminati* [2] phrase was whether the shock was to the court's "sense of justice." This court has found that the verdict was excessive, considering the nature of the injuries outlined above and the kind of verdicts that have been generally rendered in the past for similar and more severe injuries. If a verdict is excessive and out of line with experience, that means it is offensive to our sense of justice.

We recognize that jurors are given little guidance in these matters, and cannot help but be influenced by such devastating injuries. It frequently will happen that jurors will be influenced by sympathy and partiality to the injured party and, while meaning well, make a mistake due to their lack of experience and sympathy. We believe such a mistake was made in the instant case.

If the trial judge is put in the position of echoing the "magic words" of *Carminati* as to determining whether the verdict "shocks the sense of justice," or, as it has evolved, is "shocking to the conscience" (see *Tulewicz v. SEPTA,* 529 Pa. 584, 606 A.2d 425 (1991)), the trial judge will say "yes," and the other member of this court en banc concurs in that statement.

However, while those terms have a nice ring to them, the analysis of the majority opinion of your honorable court in this matter seems more appropriate in today's world.

What does it mean, shocking to the conscience? To look at it one way, if we were jurors, we could not

2. *Carminati v. Philadelphia Transportation Co.,* 405 Pa. 500, 176 A.2d 440 (1962).

vote for such a high verdict and be true to our conscience. Therefore, in this case since the verdict so exceeds our experience and anticipation, our surprise is the kind of "shocking" that is equivalent to "shocking to the conscience."

It is instructive to look at the background for Justice Musmanno's language in *Carminati.* He cites a Connecticut case where the plaintiff bears the same name as the dean of tort law, Professor Prosser. In *Prosser v. Richman,* 133 Conn. 253, 256, 50 A.2d 85, 86 (1946) the court did say that assessment of damages is peculiarly within the province of the jury and their determination should be set aside only when the verdict is plainly excessive and exorbitant.

Then the court goes on to define two alternatives, and suggests that the court pick one or the other to make a determination as to whether a remittitur will lie. It says, "The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of

"fair and reasonable compensation in the particular case, or whether the verdict

"so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption."

Justice Musmanno only looked to the second alternative when he wrote his conclusion in the case. In the *Carminati* case, the $79,500 verdict for a permanent eye injury that disfigured a 15-year-old girl, caused humiliation, and resulted in permanent double vision seems imminently reasonable, even in 1962 dollars.

However, were we to look at the *first* alternative, we certainly cannot conclude that this was "fair and reasonable compensation." As we stated originally, we

find the verdict excessive, and therefore neither fair nor reasonable. As noted by the majority, while we did not originally echo the words of *Carminati,* we gave specific reasons for our decision and our conclusion that the verdict was excessive and failed to bear a reasonable relationship to the plaintiff's pain and suffering. It would seem that every time a verdict is, in our opinion, excessive and does not bear a reasonable relationship to the plaintiff's pain and suffering, trial judges' "consciences will be shocked." We believe, therefore, that Justice Flaherty, speaking for the majority in this case, found the better way to articulate the test. The court's discretion in granting a remittitur should be sustained when, after careful consideration, it finds that "... the verdict was excessive and failed to bear a reasonable relationship to the plaintiff's pain and suffering." However, we would grant remittitur under either definition of the test.

Having determined that $8,000,000 is "shocking to the conscience," it is harder to ascertain what number is the number that is not shocking. There are no magic words or magic formula that lead us to the absolutely correct number. Our collective judgment was that a remittitur to $5,000,000 for pain and suffering was appropriate. Does that mean a remittitur to $6,000,000 would be too little or a remittitur to $4,000,000 would be too great? Of course not. All that we can do is give our best judgment as experienced civil trial judges. That is what we have done.

It is noted that because of illness, Judge I. Raymond Kremer was unable to take part in this clarifying opinion.

### [ADDENDUM BY JUDGE KLEIN]

Is there a better way to fix damages for pain and suffering? There has to be. There is no question in my mind that we will not be fixing damages for in-

tangibles this way in 25 years. There is also no question in my mind that I do not have the slightest idea in which manner we will fix damages for pain and suffering in 25 years.

For now, Pennsylvania should adopt the rule in many other states that lawyers should be able to suggest specific amounts to the jury for the pain and suffering figure. In no fault cases, the amount of "special" damages should be told to the jury to give them some guide in fixing intangible damages. Possibly the trial judge should make a non-binding suggestion of a figure to the jury. While this judge makes frequent use of the computer aided analysis of personal injury cases produced by jury verdict research, this is no replacement for human beings deciding based on the particular elements of the case.

The bottom is that for now, we trust eight or 12 people from the community with little background to make the difficult choice of fixing damages for pain and suffering. If that is to continue, trial judges must step in when lack of experience results in a verdict that is beyond the realm of reasonable. Hopefully, in the near future, we will ease our fear of juries being "tainted" and give them more information to guide them in making their decision.